William E. Groesbeck and Another v. Henry E. Seeley.

*Tax deeds as evidence — statute concerning.* — That portion of Section 124 of Laws of 1858 which makes a tax deed *prima facie* evidence of the legality of the proceedings to the date of the deed, does not conflict with the constitution, and is valid.

13 MICH — V.

GROESBECK v. SEELEY.

*County Treasurer's book of tax sales is evidence.* — A book kept by a county treasurer, containing statements of the various tax sales, the names of the purchasers, and other items connected therewith, though not distinctly required by any statute to be kept, yet being necessary to the adequate discharge of his duties, is an official book, and admissible as evidence to prove the facts therein stated.

*Limitation of actions — power of the Legislature.* — The statute, (Sec. 135, *Laws of 1858, p. 192,*) so far as it declares that lands bid off to the State, and not disposed of [for. five years, shall vest in the State an absolute title in fee simple, is not a statute of limitations, and is void, as taking private property without due process of law.

One who is in the actual or constructive possession of property is under no obligation, nor can he be compelled to take measures against an opposing claimant; and a law depriving him of the right of property in such a case is in no sense a limitation law, but an unlawful confiscation.

*Acknowledgment of deed before party in interest.* — A grantee in a deed, or one for whose immediate use it is made, cannot take an acknowledgment thereof.

But under the statute, (2 *Comp. L.*, §6237,) no trust results in favor of him who furnishes the consideration, and procures the deed to be made, unless it appear on the face of the deed, and such a trust cannot be raised by parol.

*Consideration in a deed — stamp.* — Evidence is admissible to show that no consideration passed between the parties to a deed, as, in such case, the stamp required by the act of Congress must be regulated by the value of the interest sold.

*Heard May 4 and 5.     Decided May 13.*

Error to Wayne Circuit.

The plaintiff (defendant in error,) brought ejectment to recover certain property, and introduced in evidence, a deed from the Auditor General to Collins Bradley, duly executed and acknowledged, which, omitting the formal parts, was as follows:

"WITNESSETH, *That, whereas,* in pursuance of the provisions of law, the said party of the second part, on the seventh day of January, A. D. 1864, became the purchaser of the rights of the State, in and to the following described land, situate in the County of Wayne in said State, which were bid off to the State for the taxes assessed thereon, in the years 1857, 1858, and 1860, and which has remained undisposed of for five years, from the date when it was so bid off, for the taxes of 1857, to wit: out lot one hundred and eighty-eight (188), of

Rivard Farm, City of Detroit, according to the plat thereof, containing eight acres, more or less;

"*And whereas*, The said party of the second part obtained a certificate from the Auditor General for the purchase of the above described lands, according to law, and paid to the State Treasurer upon such certificate the sum of ninety-two dollars and eighty-nine cents, being· the amount of purchase money thereof, as provided· by law, which certificate has been presented, and surrendered to the said Auditor General.

"*Now, therefore, this Indenture witnesseth*, That the said Emil Anneke, Auditor General of the said State of Michigan,· in the name of the People of said State, and by virtue of the authority vested in him by the laws thereof, in consideration of the premises, and the payment of the purchase money · above mentioned, the receipt whereof is hereby confessed and acknowledged does, by these presents, remise, release, and quit-claim unto the· said Collins Bradley, party of the second part, and to his heirs and assigns, forever, all the rights acquired by ·the State in virtue of the original sale or sales to the State in the premises above described, subject to all taxes duly assessed thereon."

The defendants objected to the introduction of said deed in evidence on the ground, that preliminary proofs of sales to the State for taxes should first be introduced; that there was no authority of law to assess, levy and collect State and County taxes in the city of Detroit for the years 1857, 1858, and 1860; that there was no authority of law to make, grant or issue said deed; that the said deed, and especially the recitals therein, were not competent; that the legal effect of the deed was not such as to sustain, or tend to sustain, title in the plaintiff, and that said deed was for other reasons inadmissible. The Court overruled the objection and admitted the deed in evidence.

The plaintiff then introduced in evidence a quit-claim deed of the same property, from Collins Bradley and wife, to him, acknowledged before E. H. Rogers, Notary Public.

The defendants made the like objection to this deed as to the first above named, and the Court overruled the objection.

The plaintiff then, further to sustain the issue on his part, offered in evidence a book kept by the County Treasurer of Wayne County, containing statements of the lands sold by him on the sixth day of October, 1858, at a continuation of the annual sales commenced on the first Monday of said October, for taxes of 1857, and by whom the same were purchased, and showing that the land in question was struck off to the State at that time, for the taxes of 1857. The defendants objected to this book and the entries therein, as not competent evidence; but the Court overruled the objection and admitted the evidence.

The plaintiff, having then proved possession by the defendant Allshodt, and a claim of title by the defendant Groesbeck, rested his case.

The defendants then offered evidence to show that in the proceedings for the assessment and collection of taxes on the land in question, for each of the years mentioned in the first deed above named, that is to say, for the years, 1857, 1858, and 1860, and each of them, there was in several particulars such a non-compliance with the law regulating the assessment and collection of taxes, that such proceedings were, in law, void and of no effect, and that the deeds introduced in evidence by the plaintiff were, consequently, absolutely null and void, and conveyed no title to the plaintiff. The plaintiff objected to such testimony, and the Court sustained the objection and refused to allow any such evidence to be introduced.

The defendants then called E. H. Rogers, one of the subscribing witnesses, and the acknowledging officer to

GROESBECK v. SEELEY.

the second deed above named, and offered to show by said witness that he, said Rogers, was the real purchaser of the land in question; that the deed from the State to Bradley, and the one from Bradley to the plaintiff, were procured by said Rogers for his own use and benefit; that the right to the possession and the profits of the land in question were intended by said conveyances to be vested in said Rogers; that the plaintiff's name was used as a mere nominal party by said Rogers for that purpose, and that the plaintiff had no real interest in the property. The plaintiff objected to such testimony, and the Court sustained the objection.

The defendant excepted to these several rulings of the Court, and the jury having rendered a verdict for the plaintiff, defendant brought error.

*L. Bishop*, for plaintiff in error:

1. The deed from the Auditor General to Bradley was not competent evidence, without preliminary proof of a sale of land to the State. Such a deed is claimed to have the same effect as a deed upon a certificate of sale of State tax lands given by the County Treasurer. — *Laws of* 1858, *p.* 191, §130, *and p.* 190, §124.

What, then, is the effect of a deed in the case last named? It will be noticed that the statute has not prescribed what shall be the form, contents, words or recitals of a deed to be given in either case.

It is to be simply *a deed of the land* conveying all the right and interest of the State. — *Laws of* 1858, *p.* 190, §124. This is all. No recitals of facts in the deed are authorized by the statute.

If the Auditor can, by a simple recital in a deed, manufacture evidence on one point, for one purpose, he can on any point, for any purpose, as may suit the convenience of dealers in tax titles.

But he has no such power. His recitals are in no re-

spect whatever, made evidence, or even required or author-
ized by statute. — *Laws of* 1858, *p.* 190, §124, *and p.*
191, §130; 1 *C. L.*, §911.

They are in no respect evidence at common law. —
1 *Greenleaf's Ev.*, §34, 211.

In *Sibley v. Smith* the Auditor's deed was objected
to, because it did not, as claimed, contain recitals enough;
but it was held that enough was recited, and the Court
declare upon authority that "recitals are not evidence
in any case, unless made so by express provision of stat-
ute." — *Sibley v. Smith*, 2 *Mich.*, 496; *Varick v. Tall-
man*, 2 *Barb.*, 113.

The familiar rule will be remembered, that the author-
ity to assess and sell lands for taxes is a simple naked
power given by the statute, and no authority, which is
not expressly given, can be exercised. — 1 *Phil. Ev.*, 472;
*Blackwell,* 45–58; 2 *Barb.*, 113; *Harrington's Ch.*, 3.

"Such statutes," say the Court, "must be construed
strictly, and their provisions can be enforced no further
than they are clearly expressed." — 2 *Mich.*, 486, 490.

The fact, therefore, that the County Treasurer gives a
certificate of · sale in the one case, or that the land is
bid off to the State in the other, is not proved by any
recital in the deed. Such fact must, in either case, be
first established by competent evidence *aliunde*, and when
so established, then the deed is admissible in evidence,
and it then becomes *prima facie* evidence of the legality
of all prior proceedings and of title in the grantee. — 2
*Mich.*, 497; 1 *Phil. Ev.*, 472.

2. The Auditor's deed should not have been admitted in
evidence, because there was no presumption of law created
by statute in favor of the regularity of the proceedings
anterior thereto, or that there were any such proceedings.

The general law as to deeds given on sales made to
private persons by the County Treasurer does not apply
to this class of deeds for *State tax lands.* — 1 *C. L.*, §871,
*amended* 1858, *p.* 185.

GROESBECK *v.* SEELEY.

Any such presumption must therefore arise on the forepart of section 124, of the act of 1858. — *See* §910, §911, *Laws of* 1858, *p.* 910, §124, *and p.* 191, §180.

In the first place I argue, with counsel in *Quinlon v. Rogers*, that this section is unconstitutional, as depriving people of their property without due process of law. — *Quinlon v. Rogers*, 12 *Mich.*, 169, *and cases cited.*

Also, because it is an assumption of judicial power by the Legislature. — *Same, and cases cited.*

In the next place this whole section is so connected with section 101 of the same act that it must fall wholly with that section under the decisions of this Court. — *Laws of* 1858, *page* 186, §101; *Waldby v. Callendar*, 8. *Mich.*, 430.

The clause in section 124 declaring the conclusive effect. of these deeds, has been pronounced unconstitutional, and in the decision, the Court say of this act of 1858, that "the whole statute was designed to go together."— *Quinlon, v. Rogers*, 12 *Mich.*, 168, 170.

If, then, the *whole statute* must go together, certainly this whole section must go together, and must fall with any part of it. If, again, the whole of section 124 does not fall with a part of it, yet the conclusive effect of the deed is destroyed by *Quinlon v. Rogers*, and nothing but its *prima facie* effect remains. We were most clearly entitled to rebut that effect, and any presumptions of the legality of proceedings anterior to the deed, by the testimony we offered on the trial.

3. The County Treasurer's book was not competent evidence. It was not such an *official register* of the acts of a public officer, as rendered it admissible in evidence. — 1 *Greenleaf's Ev.*, §483, §484.

4. It was a mere private book, containing private memoranda, for the convenience of the treasurer in collecting money of purchasers and making out certificates of sales.

We should have been allowed to prove what we offered to by the witness Rogers.

Deeds and conveyances in this State cannot be recorded, and they in no way prove themselves as evidence, unless witnessed by two subscribing witnesses, and duly acknowledged before a competent officer, as specified by the statute. — 2 *C. L.*, §2737, §2750; *S. L.* 1861, *p.* 16.

When so witnessed and acknowledged, they are evidence and prove themselves, but the effect of such evidence may be rebutted by other competent testimony. — §2750.

It appears to us as a self-evident proposition which needs the support of no authorities, and no extended argument, that a subscribing witness to a deed, and the officer before whom the acknowledgment is taken, should not be himself the real purchaser, the real grantee and the real beneficiary under the deed. The very idea of such a thing outrages the sense of propriety, and we submit, that this formal species of evidence which is of itself to have much efficacy under the statute, was never designed to be thus concocted.

*Newberry & Pond* and *C. I. Walker*, for defendant in error:

1. The County Treasurer's book, introduced in evidence, and the entries therein were competent evidence.

The statute does not in terms require the County Treasurer to keep such a book. But the very nature and necessities of the duties imposed upon him by statute require it. — *See* §867 and §870 *Compiled Laws, p.* 310. No provision is made for giving a certificate to the State of the lands bid off for it, and hence did not the County Treasurer keep written statements, like the one given in evidence, there would be no evidence of the State's purchase, except the memory of the person who made the sale.

The book, therefore, was an official one, properly and regularly kept, and was competent evidence. — 1 *Greenleaf's Ev.*, 483.

2. There was no error in the Court's refusal to permit the defendants to show that there was such a non-compliance with law in the proceedings for the assessment and collection of taxes on the land in question for the years 1857, 1858 and 1860, and each of them, that such proceedings were void and of no effect, and that, as a consequence, the deeds introduced by the plaintiff, were null and void, and conveyed no title to the plaintiff.

Said ruling was based upon Sec. 917 Compiled Laws, p. 321, as amended by Session Laws of 1858, p. 192.

If this provision is held to be valid, an absolute and incontrovertible title in fee simple to the land in question, had vested in the State, prior to its conveyance thereof to plaintiff's grantor, and the evidence to invalidate such title, was, of course, properly excluded.

The position taken is, that this section sustains a similar relation to Sec. 101 of the same act declared unconstitutional in *Waldby v. Callendar* 8 *Mich.*, 430, as does *Sec.* 89, which was by the decision in said case held to be so intimately connected with said Sec. 101, as to fall with it.

We insist that no such connection exists, and an analysis of the statute will, we think, fully demonstrate that in this we are correct.

The statute makes, recognizes and legislates in regard to three distinct classes of titles arising from sales for taxes, to wit:

*First class:* Where lands offered for sale at the annual sale for taxes of the preceding year are purchased by individuals.

*Second class:* Where lands offered at the annual sale for taxes of preceding year, find no purchaser, and are bid off for the State, and the right of the State, subsequently, within five years from the time when first so bid off for the State, is purchased by individuals.

*Third class:* Where lands bid off for the State remain

undisposed of by the State for five years from the time when so first bid off.

Sec. 124 relates exclusively to the titles designated as the "*Second Class,*" and Sec. 135 to the "*Third Class.*"

Sec. 101 and the remedy therein provided, relate solely to the titles designated as the "*First Class.*"

And hence the invalidity of that section as declared in 8 *Mich.*, 430, neither can or does in any degree affect the validity of Secs. 124 and 135.

Our title belongs to the "*Third Class.*"

Now, if it is possible (which we think it is not) to construe Sec. 101 as applying to said "*Second Class*" of titles, it cannot possibly be construed to apply to the "*Third. Class.*"

Said Sec. 101 does not provide for making the State or the Auditor General a party to proceedings under it. Yet so long as the State retains its interest in the lands, bid off for it, the sale cannot be annulled except as in proceedings to which it is directly, or by representation, a party.

Again, the remedy provided by said Sec. 101 cannot be resorted to *until after* a deed has been executed by the Auditor General for the land. This is evident from the language of said Sec. 101.

It is also apparent from Secs. 102 and 103.

By Sec. 103, provision is made for refunding the purchase money "in all cases where lands sold for taxes have been *conveyed by deed*, and the title has been annulled."

No provision is anywhere made for refunding the purchase money in any other case; and hence it is evident it was supposed no other case could occur.

But said section 135 applies solely to lands bid off to the State *which have remained undisposed of* for five years, and hence the title under it becomes *conclusive*, *before* any deed is made by the Auditor General.

If it should be held that proceedings under Sec. 101 may be commenced before the execution of a deed by the Auditor General, still, the limitation of the remedy is to "two years from the date of the deed." But as we have seen under Sec. 135, the title in the State becomes conclusive before any such deed is executed. In fact, it becomes conclusive *because* for five years no occasion for the execution of such a deed has been found.

It does not follow that there is no remedy provided for one whose land has been bid off for the State, to. test the validity of the sale before the title of the State becomes conclusive under said Sec. 135.

Sec. 133 authorizes the Auditor General to be made a defendant in actions of ejectment by any person holding an adverse claim to any land bid off for the State.

If such adverse claimant were himself in the actual possession of the premises, so that ejectment would not lie, he could sustain a bill to quiet title and make the Auditor General a party to restrain him from giving a deed.

We submit that said Sec. 135 must be held valid, and that the ruling of the Court in excluding the evidence offered, was correct.

3. The Court was correct in refusing to allow the defendants to show the facts which they offered to show by the witness Rogers.

If Rogers paid the purchase money, and the conveyances were taken to another by his consent, no trust resulted by implication of law in his favor. — *Compiled Laws, p.* 825, §2637.

No *agreement* to hold in trust could be thus proved by parol. — *Compiled Laws, p.* 942, §3177.

CAMPBELL J.:

Seeley brought ejectment against the plaintiffs in error, claiming under an Auditor's deed of State tax lands pur-

porting to have been bid off to the State for the taxes of 1857, 1858, and 1860, reciting these facts, and the further fact, that for the former year it had been held more than five years.

The defendants below objected to the admissibility of this deed: First, Because no proof had been offered of any sale to the State. Second, Because the taxes for those years in Detroit were not authorized by any existing law, and if any were levied they were void. And, third, That the recitals were not competent evidence, and there was no evidence of title in plaintiff below.

If there was no law in existence whereby the taxes for State and County purposes, for those years, could be assessed in Detroit, where the land in question lies, then we are bound to know, judicially, that no authority existed to make such a deed. The question is one of much importance, and, inasmuch as the case will be decided on other grounds, we prefer not to consider this subject until it comes before us with more light upon the actual state of affairs.

Assuming, however, that those sales may have been authorized by law, we think the deed would in such case be *prima facie* evidence that the taxes were regular, and that the land was bid off to the State for the years mentioned. These lands were purchased directly from the Auditor General at his office. By section 130 of the tax law, as amended, ( *L.* 1858, *p.* 191,) it is declared that the provisions applicable to deeds executed by the Auditor General on the surrender of certificates of sale of State tax lands, issued by County Treasurers, shall apply to deeds for such lands purchased at his office. By Section 124, ( *L.* 1858, *p.* 190) such deeds were made *prima facie* evidence of the legality of the proceedings, to the date of the deed, and conclusive evidence after being recorded two years. We held, in *Quinlon v. Rogers,* 12 *Mich. R.,* 168, that this latter clause was unconstitutional,

as depriving a party of his rights without a legal hearing. But the former clause being merely. a rule of evidence, and not preventing the owner in a legal controversy from setting up the facts which might destroy the tax deed, is not open to the same objection. The effect of this statute is not to make the deed evidence of extrinsic facts, should those facts become material; but to make it *prima facie* evidence that the lands were taxable and regularly assessed, and bid off under such laws as were in force; and the interest or title intended to be conveyed must appear. We think this entirely competent and that this is what was designed by Section 130, in reference to State tax lands sold by the Auditor General himself. Assuming, therefore, for the present, that the statutes provided for assessments and taxation in Detroit, the deed was not on any other account inadmissible, and would have been *prima facie* evidence of regularity.

The deed from Collins Bradley, the Auditor's grantee, to Seeley, was objected to on the ground that the Auditor's deed had made no foundation of title. It is therefore unnecessary to remark further upon it.

In order to prove the deeds of the several State sales a book was introduced, kept by the County Treasurer of Wayne County, containing statements of the various tax sales, and the names of purchasers, and other items connected therewith. It is claimed that this book was improperly admitted. Before such a book is received, it must appear to have been kept in the office as one of the regular office books for making such entries. But the fact that no statute distinctly requires such a book to be kept does not exclude it. The duties of the County Treasurer could not be adequately performed without his keeping a permanent record of these transactions, and such record, therefore, if kept, must be considered as an official book, and must be receivable in evidence on that basis. From the form of the objection

we do not perceive that any question arose upon the genuineness of the record as belonging to the proper custody, or upon the fact of its being kept as an office book, and we perceive therefore no reason why it should have been excluded.

The defendants below offered to show that the taxes for which the lands were sold were illegal for non-compliance with the statutes. The Court refused to permit this, on the ground that by Section 135 of the tax law, (*L.* 1858 *p.* 192.) the title to land bid off by the State is made absolute and indefeasible after five years, and no adverse title can be allowed to be set up against it, either by a plaintiff or by a defendant. Such is plainly the provision of the statute, and the only question, therefore, is, whether such a law can be maintained.

This point is substantially like that which arose in *Quinlon v. Rogers.* In that case a statute cutting off all adverse rights two years after a deed had been recorded, was held invalid, on the ground that it was depriving a party of his rights without due process of law. The Legislature had indeed undertaken to provide a sort of remedy, which was not perhaps, in its terms, strictly applicable to such titles as that involved in that case, but which was the only one devised at all. In *Waldby v. Callendar*, 8 *Mich. R.*, 430, this remedy was declared nugatory. Whether, if lawful, it would have been valid to cut off rights in possession, it was not necessary to decide. The law as it stood took away titles, without allowing parties holding the actual dominion under them any opportunity to defend their rights. There is no principle on which such legislation can be maintained. The only manner in which a party holding a lawful and vested right in property can be prevented from asserting it against one which was not lawful in its inception, is by the operation of limitation laws. These laws do not purport to take away existing rights, although their operation

, may often have substantially that result. But they are designed to compel parties whose rights are unjustly withheld from them to vindicate their claims within some reasonable time. If a person who has been ousted of his possession or dominion desires to regain it, he knows that he must resort to those means which are furnished by the law, either by the peaceable act of a party himself, or by legal prosecution. A limitation law simply requires him to proceed and enforce these rights within some reasonable time, on pain of being deemed to have abandoned them. Such laws can only operate on those who are not already in the enjoyment and dominion of their rights. A person who has a lawful right, and is actually or constructively in possession, can never be required to take active steps against opposing claims. The law does not compel any man who is unassailed to pay any attention to unlawful pretences which are not asserted by possession or suit. When such a title is set up, he has a right to defend himself, by jury, if the claim is one of common law cognizance, or otherwise, if of a different nature. But to hold that, under any circumstances, a man can be deprived of a legal title without a hearing, is impossible, without destroying the entire foundations of constitutional protection to property. No one can be cut off by limitation until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute, when he is already in possession of all that he demands.

. This statute does not purport to be a limitation law. It is designed by its express terms to deprive persons of their titles whether in possession or not, by mere lapse of time. If the proceedings to sell for taxes were illegal, no lapse of time can change their character, and they can never therefore become legal. If the tax purchaser obtains possession, and holds it until protected by a limitation law, he then becomes safe, not because his tax title is

any more regular, but because the holder of the better title has become incapable of asserting it. As an illegal tax title is a nullity, it cannot of itself divest or affect the true title in any way, and the true owner cannot be lawfully compelled to incur expense or take active measures to get rid of it, unless he sees fit. But if he becomes ousted, whether by a pretended tax title holder or by any adverse claimant, he can only secure the enjoyment of his rights by active measures, and the party in possession may then rely on such possession until it is lawfully assailed, by suit, or otherwise, within the period of limitation. In the present case, the party asserting a legal claim, against one which he claims to have been illegal, is in possession as a defendant. The other claimant is the actor, and insists that, whether his tax title was legal or worthless originally, it has become good, although the defendant has not been previously ousted and guilty of delay in enforcing this title. If this tax title can be thus made indefeasible against a title in possession, by mere lapse of time, it might as well have been declared so originally. It would in either case be nothing more nor less than depriving one of his property without any legal process, and is simply confiscation by ministerial and not judicial action.

It is insisted, however, that by section 133, the Auditor General may be made a defendant in an action of ejectment, and that a remedy is thus provided which a party aggrieved should resort to. This statute, however, does not introduce the absurdity of requiring a party who has not been dispossessed to commence an action. It simply provides who may be sued as representing the State, when an action has been commenced, rendering it "necessary" to reach the State title. It does not profess, nor does it operate, to introduce any new features into the action of ejectment, or to change its essential features as an action to obtain the possession and enjoyment of land under adverse dominion.

GROESBECK *v.* SEELEY.

The defendants below should have been permitted to attack the legality of the tax titles. We consider section 135 as invalid, so far as it divests titles.

It is also alleged, as error, that Ebenezer H. Rogers was not allowed to be asked whether he was not the real purchaser of the tax title, and whether the deeds to Bradley and Seeley were not made for his use. The acknowledgment of the deed to Seeley was taken by Rogers; and there was no proof of the deed except by means of the certificate of acknowledgment; and it is claimed that a person cannot be an acknowledging officer on his own behalf.

We should have no hesitation in holding that a person could not take the acknowledgment of a deed made to himself. Such a point is too plain for doubt. But under our statutes such a deed as is here set out, creates no resulting trust in favor of Rogers, even if he furnished the consideration; (2 *C. L.*, §2637); nor could such a trust be raised by *parole*. But if, at the time the deed was made, any valid agreement in writing existed, that the title so conveyed should be held for the benefit of Rogers, then such an acknowledgment would be a fraud, and the deed could not be proved by it unless in favor of persons not cognizant of the facts. As the offer was to prove an interest, it must be assumed to have been a valid one. The testimony was admissible also upon another ground. By showing that there was no consideration for the deed to Seeley, it would open the question of value under the stamp act, and enable the sufficiency of the stamp to be investigated on that basis: as, where there is no actual consideration, the stamp must be regulated by the value of the interest sold. We give no opinion as to where the burden of proof lies after such a showing.

For these several reasons we think the judgment should

13 MICH — W.

be reversed with costs, and the cause should be remanded for a new trial.

.   COOLEY and CHRISTIANCY JJ. concurred.

MARTIN Ch. J. dissenting.

I do not concur. I think the Legislature had ample power to pass the law in question, and that its judgment of what is reasonable binds us.