## Charles Monroe v. The Fort Wayne, Jackson & Saginaw R. R. Co.

*Railroads: Corporations: Organization: Irregularities.* A subscriber to the capital stock of a railroad company cannot set up in defense to an action upon his subscription, any mere irregularity in the organization of the company, provided it be a corporation *de facto*, proceeding without interference of the state authorities in the construction and completion and maintainance of its road.

*Railroads: Organization: Subscription: Irregularities: Corporation de facto: Affidavit.* It is no defense to such an action by such a corporation, that the affidavit of amount subscribed, etc., annexed to the articles of association filed in the office of the secretary of state, was made by three only of the nine directors, in accordance with the original statute (*Sess. L. 1855, p. 153*), instead of by at least one-half the directors, as required by the amended statute (*Sess. L. 1867, p. 90*), where, as soon as this defect was discovered, a second affidavit of five of the directors, in proper form, was attached to the articles, stating that the former affidavit was made by too small a number through inadvertence.— *Swartwout v. Mich. Air Line R. R. Co.*, 24 *Mich.*, 389, cited and held decisive of the question.

*Subscription to stock: Defense: Amount: Implied condition.* A subscriber for stock, when sued on his subscription, may show in defense the failure of the corporation to obtain the requisite amount of capital stock; for his subscription is upon the implied condition that the aggregate amount required by the statute shall be subscribed.

*Evidence: Subscription books: Official registers.* The subscription books opened and kept by the commissioners are in the nature of official registers, and are competent evidence to prove how much per mile had been subscribed to the capital stock.

*Statute construed: Extra territorial operation: Consolidation: Subscription to stock: Amount.* In case of the consolidation of a Michigan company with an Indiana company, the objection is not open to a subscriber to the former company when sued upon his subscription by the consolidated company, that it is not alleged or proved that the statutory amount per mile had been subscribed for the entire road, as well that in Indiana as that in Michigan, where it clearly appears that the requisite amount per mile of the road in Michigan had been subscribed; this requirement of our statute has exclusive reference to corporations created here for the construction of roads within our own borders, and was not intended to have any extraterritorial operation.

*Assignments of error: Practice.* Objections to the regularity of the calls for assessments which have no assignments of error to rest upon are not considered.

*Heard October 22 and 23. Decided November 4.*

Error to Jackson Circuit.

*C. A. & S. C. Stacy* and *Fidus Livermore,* for plaintiff in error.

*John D. Conely,* for defendant in error.

GRAVES, J.

The Fort Wayne, Jackson & Cincinnati Railroad Company, a Michigan corporation, consolidated with the Fort Wayne, Jackson & Saginaw Railroad Company, a corporation of Indiana, and the two companies, when so consolidated, took the style of the latter company. The plaintiff in error, prior to the consolidation, and at or before the 7th of December, 1868, became a subscriber to the capital stock of the Michigan company, and having refused to pay his subscription, this suit was brought by the consolidated company, the defendant in error, to collect it.

They recovered in the court below, and the plaintiff in error insists that he was not liable. The first ground of defense relates to the legality of the supposed incorporation of the Michigan company under the general railroad law.

The general act, as passed in 1855 (*Sess. L. 1855, p. 153*), required that the affidavit of the amount subscribed, and the amount paid in, to be annexed to the articles filed in the office of the secretary of state, should be made by at least *three* of the directors, but the amendatory act of 1867 (*Sess. L. 1867, p. 90*) required this affidavit to be made by at least *one-half* of the directors. The promoters of the Michigan company framed their articles in the summer of 1868 and therein provided for nine directors; but failing to notice the change made by the act of 1867, they proceeded to file their articles with an affidavit attached made by *three* only of the directors, when it should have been made by *five*, in order to comply with the act as amended. They seem not to have discovered this error until the following winter, when, and on the 19th of January, they annexed to the articles on file an affidavit made by five directors, and they there stated that their first affidavit was made by too small a number through inadvertence. In this interval between the 26th of September, 1868, when the articles were filed, and the 19th of January, 1869, when the second affidavit was annexed, the company

28 MICH.—35.

had completed a formal organization and had steadily and very actively prosecuted their enterprise. The commissioners named in the articles to open books of subscription had been zealously engaged, and by the 7th of December, 1868, had obtained actual subscriptions to an amount above six thousand dollars per mile for the whole road intended to be built by such company. Among these subscriptions was that of the plaintiff in error, and all were formally accepted by the company. The plaintiff in error contends that the company were not legally incorporated and empowered to receive subscriptions under the articles as first filed, in consequence of the insufficiency of the first affidavit, and that under the circumstances the filing of the second affidavit on the 19th of January, and subsequent to his subscription, superseded the first proceeding and operated to establish the corporation as of that date. His counsel argued very ingeniously in favor of their position and against an adverse application of our decision in *Swartwout v. Michigan Air Line R. R. Co., 24 Mich., 389;* but we think the doctrine of that case is clearly opposed to the defense made here.

The projectors of this company seem in good faith to have, undertaken to incorporate themselves under a law authorizing them to do so, and they appear to have truly supposed that they had consummated a valid incorporation. On the faith of this belief they in fact organized and exercised corporate functions; incurred expense and liabilities, and in various ways extensively promoted their contemplated enterprise.

The plaintiff in error met and contracted with them on the footing that they were legally incorporated and competent to receive subscriptions, and gave the weight of his name to their project and pretentions. He became a subscriber for stock on the books opened by the commissioners, and voluntarily put himself in a position to claim the rights of a stockholder.

In thus agreeing with the company for stock and to pay

for it, he encouraged the making, in accordance with the articles, whatever future expenditures might reasonably be expedient and needful in furtherance of the scheme, and virtually admitted, as between himself and the company, that an incorporation had been consummated. The action of the company was continuous from the time when the articles were first filed, and its identity was never lost or changed.

The filing of the second affidavit was a measure designed solely to correct an irregularity, and not to indicate the launch of another company. In view of all the circumstances, we think the plaintiff in error was not at liberty to contest his liability on any point dependent on the fact that the affidavit first filed was made by three of the directors only. And this conclusion we consider as rendered proper by our decision in the case of *Swartwout v. Michigan Air Line R. R. Co.*, to which we refer as exhibiting very fully the views we entertain on this branch of the case.

When the opinion there given is examined, it will be observed that a distinction was plainly marked between the right of a subscriber for stock when sued for his subscription, to insist upon irregularities in the incidents connected with the preparation and filing of the articles, and in the routine affairs of the company, and his right to set up a failure by the corporation to obtain the requisite amount of capital stock. His position as an agreeing party with the company as a corporation—as a joint associate in the enterprise, and as one who has given countenance, impulse and credit to the movement in its aspect of one which is regular and legal—may justly preclude him from setting up irregularities like those first mentioned, in order that he may cast upon others his share of a common burden which he helped to induce. But the very nature of his undertaking as a subscriber for stock implies a different relation and a different obligation as respects his right to object that an insufficient amount of stock has been subscribed.

In that case the objection is not inconsistent with the

supposition of a regularly organized corporation in the exercise of its corporate functions. But it implies very correctly that the undertaking of a subscriber to the capital stock is to pay up for his stock only on the condition that the aggregate amount of capital stock made necessary by statute is actually subscribed, and substantially asserts that such amount has not been obtained. It insists upon a fundamental term of the contract itself, and not upon irregularities adduced to show that the company the subscriber treated with and held out as a corporation was not one, and hence that his formal undertaking was no contract at all.

The point next to be noticed requires no discussion. It relates to the admission of the subscription books to prove that six thousand dollars per mile had been subscribed, and the position taken is, that the showing of the subscription per mile could be made only by specific proof of each subscription, and that the books opened and kept by the commissioners were not proper evidence. The subscription sued on was specially proved, and we are satisfied that the books were admissible to show the other subscriptions and the amount per mile. The books in question are of the nature of official registers, and the subscriptions contained in them were taken under the sanction of official duty. We think the right to use them as evidence to prove how much per mile had been subscribed, in this action against a subscriber, is entirely clear.—*1 Greenleaf's Ev.*, §§ 483, 484; *Groesbeck v. Seeley, 13 Mich., 329; 2 Cow. and H. Notes, p. 1156, note 800.*

The remaining objection open to the plaintiff in error upon this record and now insisted on, is that it was not alleged, and did not appear, that six thousand dollars per mile had been subscribed for the entire road of the companies as consolidated.

As already stated, it did appear that more than six thousand dollars per mile were subscribed for the road of the Michigan company, and which road was all within the

limits of this state. The point of this objection is, then, that it was not shown that six thousand dollars per mile had been subscribed for the road in Indiana, and which the Indiana company were incorporated to construct. This objection appears to us to be clearly untenable. The legislature of Michigan in regulating this subject acted upon their own views of the policy best suited to the interests of this state, and they did not assume to determine what would or would not be expedient elsewhere.

The provision in our statute as to the amount per mile necessary to be subscribed has exclusive reference to corporations created here for the construction of roads within our own borders, and was not intended to have any extra-territorial operation. And the circumstance that the company in this state has consolidated with a company created in Indiana to construct a road there, cannot serve to make this regulation attach as a condition to the body owing its existence to Indiana.

Some objections were suggested on the argument to the regularity of the calls, but the point does not appear to have been made on alleging error. We therefore refrain from considering that subject.

As no error is shown, the judgment should be affirmed, with costs.

The other Justices concurred.