AUGUST FITGER v. ALGER, SMITH & COMPANY and Others.[1]

September 10, 1915.

Nos. 19,340—(218).

**Mortgage — notice of foreclosure sale.**
    1. Under the evidence it was a question for the jury whether the character

[1] Reported in 153 N. W. 997.

of the occupancy of lands at the time of a mortgage foreclosure sale of them was such that a notice of sale should have been served pursuant to G. S. 1913, § 8111 (R. L. 1905, § 4459), upon the one in possession.

**Same — service on occupants of land.**

2. If the character of the occupancy was such as to require the service of notice upon the one in possession, then notice was required, though the one in possession was in possession without authority or license.

**Action to set aside foreclosure sale.**

3. The statute, G. S. 1913, § 8143 (R. L. 1905, § 4477), requiring actions to set aside foreclosure sales and defenses thereto for certain named defects in the foreclosure proceeding to be brought or interposed within a certain period, is not unconstitutional as against one in possession prior to the enactment of the statute, upon the ground that one in possession cannot constitutionally be required by an after enacted statute to bring an action or interpose a defense against an adverse claimant, unless such one in possession is in possession claiming under the chain of title affected by the foreclosure.

Action in ejectment in the district court for Carlton county. The case was tried before Fesler, J., and a jury which rendered a verdict in favor of defendants. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*Hugh J. McClearn* and *P. C. Schmidt,* for appellant.

*Spencer J. Searls* and *Crassweller, Crassweller & Blu,* for respondents.

DIBELL, C.

Action in ejectment tried to a jury. There was a verdict for the defendants. The plaintiff appeals from the order denying his motion for a new trial.

The plaintiff relies upon a mortgage foreclosure sale made on March 12, 1894. The defendants do not rely upon title in themselves, though they claim by adverse possession in their pleadings. They assert a lack of title in the plaintiff as an actual defense. The only defendant necessary to mention is the defendant Oswell. He is the one in possession and his codefendant appearing is a judgment creditor.

It is claimed by the defendant that the mortgage foreclosure was defective. The defect claimed is that the lands were occupied and that no service of a notice of foreclosure sale was made upon the one in possession.

There are three general questions:

(1) Whether the occupancy of the mortgaged premises was of such character that there should have been service of the notice of foreclosure sale upon the one in possession, in the manner provided by G. S. 1913; § 8111 (R. L. 1905, § 4459).

(2) Whether, if the occupancy was of the character stated, it was necessary to serve notice upon the one in possession if he was in possession without authority or license.

(3) Whether, because of the defendant's possession after the foreclosure sale, the plaintiff can avail himself of G. S. 1913, § 8143 (R. L. 1905, § 4477), requiring actions to set aside foreclosure sales and defenses thereto for certain named defects to be commenced or interposed with reasonable diligence, and not later than five years after the sale.

1. It is conceded that on October 29, 1890, one Fred Theilaker was the owner of the premises involved. On that day he gave a mortgage to the plaintiff to secure $430, due in six months. In January, 1894, the plaintiff commenced foreclosure under the power of sale contained in the mortgage. The sale was made on March 12, 1894. The statute requiring service of notice of foreclosure sale is as follows:

"Six weeks' published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof, and at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied. If there be a building on such premises used by a church or religious corporation, for its usual meetings, service upon any officer or trustee of such corporation shall be a sufficient service upon it." G. S. 1913, § 8111 (R. L. 1905, § 4459).

The claim is made that there was no such occupancy of the mort-

gaged premises as required service. There is no claim that service was made.

There is evidence from which it might be found that Oswell entered upon the land and commenced to cut the timber in the fall of 1893 and continued throughout January and February, 1894; that he landed the logs upon a lake on the premises; that he built roads during the fall of 1893; that the work continued during the winter of 1893–1894; that during this time he had a crew of men, some six or eight, working on the land, they living with him nearby; that in the fall of 1893 he moved a house, intended as an ice-house, onto the land, and filled it with ice in the early part of 1894; that two rollways were placed upon the land in the fall of 1893 and were there during the winter; that logs amounting to two or three hundred thousand feet were piled upon the rollways prior to February 12, 1894; that during the fall and winter of 1893–1894 the defendant put building materials upon the lands for the purpose of building a residence; and in general that all these physical evidences of occupancy were present at the time when notice of foreclosure should have been served if at all. The occupancy was visible and in no way concealed. It was such possession as an owner might have of lands if he were marketing the forest products, or marketing them and getting ready for permanent occupation of the land; and it is hardly to be supposed that one on the land would fail to observe it. Oswell was living nearby and his operations were directed from where he lived. A concrete illustration clears the situation: Suppose Theilaker had been living where Oswell was, and had used the land as Oswell claims he used it. Might it not then be reasonably found that the occupancy was such that notice of the foreclosure sale must have been served upon him? We think so. A finding of occupancy such as in the ordinary case requires notice was justified.

2. There is evidence from which it might be found that in the fall of 1893, Theilaker, who had received his patent in the prior summer, entered into an oral contract with Oswell, whereby Oswell was to cut the timber and divide profits, and was afterwards to buy the land. There is evidence from which it might be found that Oswell entered without license or authority. The court charged the

jury, in effect, that, if there was a physical occupancy which made the service of notice essential in other cases, it was equally essential though Oswell was taking the timber off the land and doing whatever he did without authority or license.

The contention of the plaintiff is that if Oswell was in possession without authority or license it was not essential to the validity of a foreclosure that a notice be served upon him.

In Swain v. Lynd, 74 Minn. 72, 76 N. W. 958, Justice Mitchell suggested that the legislature, realizing the difficulty of determining ownership or who had an estate or interest in the land, limited the service to the party in possession when it was actually occupied, and in discussing the subject said:

"Moreover, the language of the statute will not admit of the construction sought to be placed upon it. It provides that notice shall be served 'on the person in possession of the mortgaged premises, if the same are actually occupied.' * * * Counsel seek to interpolate into the statute the words 'who has some estate or interest in the premises other than mere possession.' It might be further suggested that possession itself constitutes an interest in land. In further answer to the first proposition, it should be added that, while a person may waive for himself the failure to serve notice on the occupant, he cannot waive it for others who are interested in the land. * * * A foreclosure by advertisement is a proceeding *in rem* as well as *in pais*. While the power to foreclose is derived from convention of the parties, yet the proceedings in the exercise of the power, so far as regulated by statute, are purely statutory; and, in order to constitute a valid foreclosure, all the requirements of the statute must be substantially complied with."

In Casey v. McIntyre, 45 Minn. 526, 48 N. W. 402, and Casserly v. Morrow, 101 Minn. 16, 111 N. W. 654, language of similar import is used. These cases do not speak of a situation such as is presented by the case before us; but they are of value in indicating the necessity for notice and the reason for requiring it.

The diligence of the trial court and of counsel has discovered no controlling line of authorities and no parallel case.

A foreclosure under a power is statutory. The notice which the

statute says shall be given must be given. The statute might have dispensed with service of notice on the occupant; but it did not. It might have provided for various other ways of giving notice; but it provided this way. We are of the opinion that the court cannot dispense with a service on one in possession, the character of the occupancy being such as to require notice, though it turn out that he is in possession without license or authority. If there is the possession which if in the owner would require notice, there must be service; and the ascertainment of what particular right the occupant had is not left for ascertainment in future litigation over the title acquired by foreclosure.

We do not mean that a trivial occupancy is such occupancy as the statute intends. The occupancy must be substantial and suited to an appropriate use of the property possessed. The trial court was right in its charge.

The views stated in this paragraph are the views of a majority. The court is not unanimous.

3. It is contended that in any event the irregularity, if there was any, in failing to give notice to the occupant is cured by G. S. 1913, § 8143 (R. L. 1905, § 4477), which reads as follows:

"No such sale shall be held invalid or be set aside by reason of any defect in the notice thereof, or in the publication or service of such notice, or in the proceedings of the officer making the sale, unless the action in which the validity of such sale is called in question be commenced, or the defense alleging its invalidity be interposed, with reasonable diligence, and not later than five years after the date of such sale."

This section has its origin in Laws 1883, p. 155, c. 112. Before then we do not find a like provision. The original section provided, among other things, that "no such sale shall be held invalid or set aside by reason of any defect in the notice thereof, or in the publication or posting of such notice, or in the proceedings of the officer making such sale, unless the action in which the validity of such sale shall be called in question be commenced, or the defense alleging its invalidity be interposed within five years after the date of such sale." It appears in the same form in G. S. 1894, § 6054. This

latter section was amended by Laws 1901, p. 592, c. 374, approved April 13, 1901, so as to provide "that no such sale shall be held invalid or set aside by reason of any defect in the notice thereof or in the publication or posting of such notice, or in the service of such notice on the person or persons in possession of the mortgaged premises," etc. This is the first time we find a limitation referring to a defect "in the service of such notice on the person or persons in possession of the mortgaged premises;" and in the Revision of 1905 the provision in reference to the "posting of such notice" was dropped. So far as we find the provision as to posting a notice was enacted in 1849 and repealed in 1851. Ter. Laws 1849, c. 63, § 43; R. L. 1851, c. 85, § 4.

If we are right in following the statutes the situation stood this way: On April 13, 1901, Oswell was in possession of the lands. The provision of what is now G. S. 1913, § 8143 (R. L. 1905, § 4477), relative to the limitation upon an action or defense involving the validity of a sale when there is a defect in the "service of such notice" then first became effective.

Oswell contends that being in possession no statute could constitutionally compel him to bring an action to test the validity of the foreclosure sale at the peril of losing his property; and that, being in possession, whenever ejectment was brought he could take advantage of defects in the foreclosure though of the character intended to be barred by the limitation statute. The thought runs through the books and cases that one in possession cannot, without an invasion of his constitutional rights, be required to commence an action against an adverse claimant. This general subject is discussed in Cooley, Const. Lim. pp. 520–528; Dembitz, Land Tit. § 175, p. 1347.

Judge Cooley sums up the substance of the doctrine in this way:

"One who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another, for failure to bring suit against that other within a time specified to test the validity of a claim which the latter asserts, but takes no steps to enforce. It has consequently been held that a statute which, after a lapse of five years, makes a recorded deed purporting to be executed under a

statutory power conclusive evidence of a good title, could not be valid as a limitation law against the original owner in possession of the land.  Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims."

The defendant refers to Baker v. Kelley, 11 Minn. 358 (480), involving a statute limiting the time in which to bring an action to test the validity of a tax sale.  It was there held that the statute was valid if construed as a limitation upon the particular form of action, but unconstitutional as not due process of law if construed to bar the rights in the property of the claimant in undisturbed possession, unless he brought an action within the time limited.  The court quotes as from Groesbeck v. Seeley, 13 Mich. 329, the following language, which is, in substance, the purport of the decision:

"Limitation laws always must operate to compel a party to enforce or prosecute his claim within a reasonable time, but a party who is in the enjoyment of his rights cannot be compelled to take measures against an adverse claimant, and a law taking away the rights of a party in such cases is unlawful confiscation, and in no sense a limitation law." [1]

The defendant also refers to Sanborn v. Petter, 35 Minn. 449, 29 N. W. 64.  The foreclosure sale was in 1864.  There the defendant was in possession since 1867.  It was held that he might contest the validity of a foreclosure in an action of ejectment subsequent to the act of 1883 for defects apparently barred by it.

The case of Risch v. Jensen, 92 Minn. 107, 99 N. W. 628, should be noted, to the end that the present case may not add confusion as to the effect of the limitation statute.  There it was held that there were no vested rights to be affected by the application of the five-year limitation when there was no possession at the time of the passage of the act and no interest was acquired until subsequent to its passage.  The court said, in effect, that there could be no impairment of a vested right when the right arose subsequent to the statute.

---

[1] [These words do not appear in the Michigan opinion but the substance of them will be found in a reference to that opinion in 4 American Law Register (N.S.) 572 (July, 1865)].

Oswell acquired possession somewhere about 1893 to 1895. The five-year limitation statute did not apply to the defect under consideration until the passage of the act of April 13, 1901.

We are unable to see how the constitutional rights of one in possession, claiming adversely to the record title which the mortgage affects, or independently of it, are invaded by a limitation statute, though enacted after the possession was initiated, making the title at the foreclosure sale good as against certain defects after the lapse of a fixed number of years, unless within such time an action is brought or a defense is interposed asserting such defects. Theilaker, by not bringing action, lost the right to assert these defects against Fitger. That put title in Fitger after five years from the date of sale. A stranger to the title, though in possession, had no recognizable interest in preventing the running of the bar of the statute. Building up an adverse title, or claiming through a hostile one, or through one of independent origin, he cannot claim that the statute was inoperative as a bar against Fitger. When the title passed by patent from the United States to Theilaker it was for the state to determine the method of its devolution. The statute determined a way whereby the title might pass from the mortgagor to the purchaser at the foreclosure sale. There were certain defects in the proceeding. The act of 1901 provided that, unless action was brought or a defense interposed within a certain period attacking the sale because of these defects, no action should be brought or defense interposed because of them. Concededly this statute was valid as between Theilaker and Fitger. Upon the lapse of five years title was good in Fitger and was not in Theilaker. The chain of title that started in the patent from the United States had come to Fitger. It was no concern of a stranger to the title that the statute had cured the defects in the foreclosure. It was no concern of Oswell, if he was a stranger, that the record title was by the statute made perfect in Fitger. It was no more a concern of his than it would have been if Theilaker had chosen to deed the land to Fitger before the redemption period expired or after it expired. An after enacted statute, curing defects in the foreclosure, or limiting the time for bringing an action to avoid the foreclosure because of them, was not

unconstitutional as to Oswell who was not interested in the chain of title.

If it be shown that he was in under Theilaker, either by contract or grant, or by other legal relation giving him a right to the land, he is in position to urge that the plaintiff could not take advantage of the limitation statute. If he was connected with Theilaker's interest, so that he was claiming a valid interest through Theilaker, and was in possession, he was in position to assert that the statute did not operate as a bar.

The character of the possession of Oswell, on April 13, 1901, when, if ever, the limitation statute commenced running, does not appear. The effect of the limitation statute was not suggested to the trial court; but it is involved in this appeal.

The law of the case is settled for a new trial. If there was the possession which would require notice of foreclosure if the one in possession was the owner, notice was required though the one in possession was there without authority or license. If notice should have been given, the limitation statute, which commenced running on April 13, 1901, cured the defect in not giving it, unless Oswell was in possession by virtue of a valid claim under the Theilaker chain of title. If he was in possession under such claim, the statute did not run and there was no limitation of his right to assert the defect in the foreclosure.

Nothing which is here said should be taken as an indication that Oswell may not have a title by adverse possession. If he has it, it is in hostility to the Theilaker chain of title and not through it.

Order reversed.