(109 N. W. 350.)

————

LOUISA M. NIND v. VALERIA R. MYERS AND WILLIAM H. BECK.

Opinion filed May 15, 1906.   Rehearing denied October 16, 1906.

**Taxation — Certificate of Sale — Erasure of Surplus Portion of Blank.**

> 1. A certificate of sale for taxes, under chapter 67, page 76, Laws 1897 (section 1331 et seq., Rev. Codes 1899), is not void on its face because of the failure to erase those parts of the blank form which were designed for use in case of a sale on different terms, where the certificate was otherwise in proper form, and the unerased parts could not mislead.

**Same — Validity of Sale — Precedent Judgment.**

> 2. Under section 15, chapter 67, page 85, Laws 1897 (section 1345, Rev. Codes 1899), such a certificate is prima facie evidence of a valid sale without proof of a precedent judgment. (Young, J., dissenting.)

**Same — Burden of Proof.**

> 3. The party attacking such a certificate has the burden of showing that there was no valid judgment. (Young, J., dissenting.)

**Same — Sale — Legislative Requirement.**

> 4. The provision, in the "Woods Law" (chapter 67, page 76, Laws 1897), for a judgment before a sale for taxes, was merely a legislative requirement and was not inherently or constitutionally necessary as a condition precedent to the right of the legislature to authorize a sale of the property for unpaid taxes.

**Sale—Setting Aside Tax Sale—Statute of Limitations.**

5. A sale under the "Woods Law," pursuant to a judgment apparently valid, but in fact invalid for want of jurisdiction in the court to render it, cannot be avoided in an action commenced more than three years after the sale, where part of the taxes for which the sale was made were paid, and though the land had never been occupied. (Young, J., dissenting.)

**Same — Redemption Notice — Service on Non-Resident.**

6. The notice of the time when the right to redeem from a tax sale under the "Woods Law" will expire may be mailed at the residence of the certificate holder, even though that residence is not within the state.

**Same — Sale — Affidavit of Mailing.**

7. The affidavit of mailing such notice, filed with the clerk of court pursuant to section 1344, Rev. Codes 1899, is competent evidence of such mailing.

**Same — Notice of Expiration of Redemption.**

8. When the land is in fact unoccupied, it is not necessary to state that fact in the affidavits filed pursuant to section 1344, Rev. Codes 1899, in proof of service of the notice of expiration of the time to redeem.

**Same — Sale Certificate — Redemption.**

9. The party claiming title under a tax sale certificate issued pursuant to the "Woods Law" need not prove that no redemption has been made.

Appeal from District Court, Stutsman county; *Glaspell,* J.

Action by Louisa M. Nind against Valeria R. Myers and William H. Beck. Judgment for plaintiff, and defendants appeal.

Reversed, and judgment ordered.

*Marion Conklin,* for appellants.

Failure to furnish copy of judgment to sheriff upon which to sell is not fatal. Kipp v. Collins, 33 Minn. 394.

The description NE4 NW4SW4 S2NW4 taken with owner's name and the quantity of land embraced, viz., 280 acres, is definite. Stoddard v. Lyon, 89 N. W. 1116.

The title under sheriff's certificate is cured by the statute of limitations. Whitney v. Marshall, 17 Wis. 174; Stoddard v. Lyon, supra.

If defendant's tax deeds are set aside they are entitled to judgment for the amount of the valid tax. O'Neill v. Tyler, 3 N. D.

47, 53 N. W. 434; Douglas v. Fargo, 13 N. D. 467, 101 N. W. 919; McHenry v. Brett, 9 N. D. 68, 81 N. W. 65.

*John Knauf, Wicks, Paige & Lamb,* for respondent.

The description NE4 NW4SW4 S2NW4 is void. Kent v. Hayden, 2 N. W. 495; Knight v. Alexander, 37 N. W. 799; Power v. Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511.

To render tax certificates evidence, precedent judgment must be proven. Sanborn v. Cooper, 17 N. W. 856; Russell v. Gilson, 31 N. W. 692.

The certified copy of the tax judgment is the sheriff's warrant for sale, and without it his act is void. Cooley on Taxation (3d Ed.) 927. Bell v. Johnson, 111 Ill. 374; Ransom v. Henderson, 2 N. E. 667.

Mailing of notice of redemption to one outside of the state is void: Laner v. Webster, 52 N. E. 489.

Where there is no judgment or there is a want of jurisdiction to enter it, statute of limitations does not apply. Sanborn v. Cooper, supra; Knight v. Alexander, supra.

ENGERUD, J.  Plaintiff, claiming to be the owner in fee of a tract of and in Stutsman county comprising 280 acres, and described as the S. W. ¼ and the S. ½ of the N. W. ¼ and the N. E. ¼ of the N. W. ¼ of section 35, in township 137, range 64, brought this action in statutory form to quiet her title against Valeria R. Myers, William H. Beck, and all other persons unknown,    etc. Valeria R. Myers and William H. Beck appeared and filed separate answers, each of which were subsequently amended. Each of said defendants claim title in themselves by virtue of numerous tax sales. The trial resulted in a judgment declaring all the tax sales void and quieting the title in plaintiff. Both defendants join in an appeal from the judgment and demand a new trial of the entire case.

It is conceded that the tax deeds under which Valeria R. Myers alleged title are void, because they name as grantee one David Myers, the original tax-sale purchaser, who had died before the   execution of the deeds. This appellant, however, claims a lien upon the land by virtue of the tax sale certificates upon which the void deeds were issued; she having succeeded to the rights of the tax sale purchaser. The record discloses that, in attempting

to describe the land in the assessment roll upon which her tax sales are based, the assessor made use of the abbreviations: "N. E. 4 of N. W. 4., S. 2 of N. W. 2 and S. W. 4." Upon authority of Power v. Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511, and Power v. Larabee, 2 N. D. 141, 49 N. W. 724, which have established a rule of property in this state, we are constrained to hold that there was no assessment, and hence no valid tax or tax sale, because there was no property described. Beggs v. Paine (just decided) 109 N. W. 322. The appellant Beck claims title under several successive tax sales upon which deeds have been issued. He also claims title by virtue of a sale of the land to him on November 21, 1897, by the sheriff of Stutsman county, pursuant to a judgment rendered against the land for taxes delinquent prior to 1895, in proceedings under the so-called "Woods Law" (chapter 67, p. 76, Laws 1897). In support of his claim of title under this sale, the defendant introduced in evidence the certificate of sale and the affidavits on file with the clerk of court in the proceedings, showing service of the notice of expiration of the time for redemption. The sufficiency of these documents as evidence of the facts sought to be established thereby were duly challenged by plaintiff at the trial for reasons which will appear in the subsequent discussion of the case. For the purpose of showing that the proceedings were void, the plaintiff offered in evidence the newspapers attached to the affidavit of publication of the notice and delinquent list on file with the clerk of court in the proceedings. It appears therefrom that the land was not clearly described in such published list. The section, township, range, and number of acres were properly stated, as well as the name of the owner, and the S. ½ of the N. W. ¼ was sufficiently identified. The abbreviations referring to the remainder of the land were: "N. E. ¼ N. W. ¼ S. W. ¼." Assuming that the fact that the number of acres was stated sufficiently shows that these abbreviations were intended to describe 200 acres, instead of only ten acres, we are still confronted with the difficulty that, by reason of the absence of punctuation marks, it is not certain whether the entire series of abbreviations refer to the N. E. ¼ of N. W. ¼ and S. ½ of N. W. ¼ and S. W. ¼, or whether it refers to the N. W. ¼ of S. W. ¼ and S. ½ of N. W. ¼ and N. E. ¼. The entire description could be read either way, and yet describe a single tract consisting of 280 acres. We are not prepared

to say, however, that the description would necessarily be bad, if it were shown that the tract in question was the only land owned by Louisa Nind in that section. The delinquent list describes part of the land in question. The original list in the judgment book is not in evidence. We must assume that the land was therein properly described, because the sheriff was guided by the description in the original judgment in making the sale, and the certificate of sale gives a correct description of the land. The judgment was therefore on its face apparently valid; but, without expressing any opinion on the point, we shall assume, for the purposes of this case, that the judgment was in fact void for want of a clear description in the delinquent list or citation. The plaintiff also proved that no certified copy of the judgment was delivered to the sheriff before sale, but that the sheriff in making the sale used the original judgment book. This irregularity was not fatal, State Finance Co. v. Beck (just decided) 109 N. W. 357.

The respondent contends that the certificate of sale is void on its face. The certificate was made out on a blank form designed so as to be used in case of a sale either for a term of years, or to a fee-simple purchaser, or to the county; it being intended that the sheriff should fill up the proper blanks to suit the facts and strike out the inapplicable paragraphs. In this case all the blank spaces were properly filled out, but the officer neglected to draw a line through, or otherwise strike out, the paragraphs to be used in case of a sale for a term of years or to the county. This certificate is in the following form:

"Document No. 3210.

"Sheriff's Certificate of Sale of Real Estate Tax Judgment. State of North Dakota, County of Stutsman—ss.: No. 36.

"I, John H. Severn, the sheriff of said county, do hereby certify that at the sale of lands pursuant to the real estate tax judgment entered in the district court of the county of Stutsman, on the 7th day of Ocober, A. D. 1898, in proceedings to enforce the payment of taxes delinquent upon real estate for said county, which sale was held at Jamestown, in said county, on the 21st day of November, A. D. 1898, the following described piece— or parcel— of land situated in said county and state, to wit:

| SUBDIVISION | Sec-tion | Town.ship | R'nge | Am't Sold ǀFor |
|---|---|---|---|---|
| Northeast quarter of Northwest quaater and Southwest quarter and South half of Northwest quarter...... ........... ...... ............... | 35 | 137 | 64 | $68.63 |

—was offered to the bidder who would pay the amount for which the same was subject to be sold, for the shortest term of years in said piece—or parcel—.

" * (And ———— having offered to pay and having paid such an amount, to wit: The sum of ———— dollars for the term of ———— years, that being the shortest term for which any person offered to take said piece— or parcel— and pay said amount: I do therefore, in consideration of the amount so paid, and pursuant to the statutes in such cases made and provided, let the said piece— or parcel— of land to the said ———— for the term of ———— years from the date hereof, subject to any redemption provided by law.)

" ! (And no person having offered to pay such amount for a term of years, I did sell the fee of said piece— or parcel— of land to William H. Beck for the sum of sixty-eight 63-100 dollars, that being the highest sum bid therefor; and he having paid such sum, I do, therefore, in consideration thereof and pursuant to the statutes in such cases made and provided, convey the said piece— or parcel— of land in fee simple to the said William H. Beck, his heirs and assigns, forever, subject to any redemption provided by law.)

" || (And there being no bidder upon that offer, I offered the fee of the same to the highest bidder, and no one bidding upon such an offer an amount equal to that for which said piece—or parcel— w———— subject to be sold, the county treasurer of Stutsman county bid in the same for the county at such amount, being the sum of ———— dollars. In consideration whereof and pursuant to the statutes in such cases made and provided, I do hereby convey said piece— or parcel— of land in fee simple to the county of Stuts-man, state of North Dakota, and its assigns, forever, subject to any redemption provided by law.)

"Witness my hand this 21 day of November, 1898.

"John H. Severn.

"Sheriff of Stutsman County, N. D.

"[U. S. Revenue Stamp, 10c.]"

Upon the margin the following notations appeared:
" * Use this form when let for a term of years.
" ! Use this form when sold in fee simple to actual purchaser.
" || Use this form when bid in for the county."

The statute requires only substantial compliance with the prescribed form. The fact that the two paragraphs designed for use in case of a sale for a term of years or a sale to the county were not stricken out could not possibly mislead or render the certificate uncertain in meaning, especially in view of the marginal notes. The certificate sets forth all the facts required by the statutory form.

Respondent maintains that the certificate of sale is of no avail as evidence unless it is shown that there was a valid judgment authorizing the sale. In other words, it is claimed that the certificate is not prima facie evidence of a valid sale pursuant to a valid judgment. This question was decided in Cruser v. Williams, 13 N. D. 284, 100 N. W. 721, and we are satisfied that the views there expressed were correct. Whatever evidentiary force is possessed by the certificate is derived from section 1345, Rev. Codes 1899. The first sentence of that section declares: "The certificate shall in all cases be prima facie evidence that all the requirements of law with respect to the sale have been complied with." If this were all of the section, there would be much force in respondent's contention that the certificate is merely evidence of the regularity of those proceedings after judgment which the law requires to be observed in connection with the sale. The section must be read as a whole, and all its parts construed together. So read, the intent of the legislature is unmistakable. The remainder of the section is as follows: "And no sale shall be set aside or held invalid unless the party objecting to the same shall prove either that the court rendering the judgment, pursuant to which the sale was made, had no jurisdiction to render judgment, or that after the judgment and before the sale such judgment had been satisfied; and such certificate shall be conclusive evidence that due notice of sale as required by this article was given, and that the piece or parcel of land was first offered at such sale to the bidder who would pay the amount for which the piece or parcel was to be sold for the shortest term of years; and the validity of any sale shall not be called into question unless the action in which the validity of the sale shall be called in question shall be brought or the defense alleging its invalidity be interposed within three years

from the date of sale." The fact that the certificate is made conclusive evidence that due notice of sale was given, and that the land was first offered for sale for a term of years, indicates strongly that the first sentence, in which it is declared to be prima facie evidence, was not intended to apply solely to proceedings directly connected with the notice and manner of conducting the sale. The second sentence, however, removes all uncertainty in this respect, because it expressly puts the burden of showing want of jurisdiction upon the party attacking the sale. It would be absurd to hold that the purchaser must support his certificate by proof of a valid judgment, and at the same time assert that the sale must be presumed to be valid, unless the objecting party proves absence of jurisdiction. Furthermore, even want of jurisdiction is not available as an objection to the sale, unless urged in an action brought before the expiration of three years. We think the section plainly means that the certificate shall be taken as prima facie evidence of a valid sale based on a valid judgment; that it may be attacked for invalidity only for want of jurisdiction in the court to render the judgment, or on the ground that the judgment had been paid before sale; provided one or the other of those grounds for avoiding it are established by the objecting party in an action brought within three years after the judgment; and, if not so attacked, the certificate becomes conclusive evidence of a valid sale.

This action was not commenced until nearly five years after the sale. It follows that the objections urged against the sale by respondent, even if we assume that they would have been fatal to the sale, if urged in time, are now barred by lapse of time, unless the limitation feature of section 1345, Rev. Codes 1899, is violative of some constitutional provision so as to render the statute wholly void or inoperative as a bar to the objections now urged by respondent. The constitutional power of the legislature to limit the time within which the regularity of tax sales or tax proceedings may be attacked is beyond question. As we said, in the case of Beggs v. Paine (decided at this term) 109 N. W. 322: "The primary requisites to the validity of such a law are that some right of the person sought to be barred by it has been invaded or denied, for which he has a remedy, and that a reasonable opportunity to avail himself of the remedy is afforded. These conditions existing, it is competent for the legislature to impose upon

such person the duty to avail himself of his remedies within the given time, and to declare that his failure to do so shall operate as a bar to any relief." It is obvious that this power may be exercised in either of two ways; either by an ordinary limitation act barring all remedies after a given period, or by declaring that after a stated time a conclusive presumption of regularity shall arise in favor of the proceeding in question. Beggs v. Paine, 109 N. W. 322, and cases cited.

Section 1345 is an example of the last-mentioned method of exercising the power. It purports to create a conclusive presumption that the sale was in all respects valid, unless attacked within a given period of time, and does not require adverse possession to set the limitation period in motion. Did the legislature violate any constitutional limitation of its powers in declaring that the sale should be conclusvely presumed to be valid after three years, even though the court had no jurisdiction to render judgment pursuant to which the sale was held, and even though there had been no adverse possession of the land by any one claiming under the sale? The taxes for which the sales under the "Woods Law" were made were those which had been imposed prior to 1895 and which had never been paid or collected by sales of the land to actual purchasers. The taxes were presumptively valid. By this act, the state, in effect, caused actions to be instituted in each county and required all persons interested in the lands to come forward and either pay the taxes or show cause why a judgment of the district court should not be rendered conclusively establishing the validity thereof. It must be borne in mind that these taxes had been imposed in previous years, and the taxpayers had already had ample opportunity to contest the validity thereof. Under our system of taxation, real estate taxes are charged directly upon the land taxed. They are imposed each year at stated times and places fixed by general law. Every owner of land subject to taxation knows that, if the public officers do their duty according to law, his land will be assessed and taxed each year, and he knows when, where, and by whom each step in the tax proceedings is to be taken, and where the public record of each step in the proceeding can be found. In other words, inasmuch as he is chargeable with knowledge of the law, he is chargeable with knowledge that, presumptively at least,. an attempt has been made each year to tax his land. The sale of the land for unpaid taxes is also made at

certain times and places fixed by general law. It will be seen, then, that, under our system of real estate taxation, a landowner is not dependent upon the service of actual notice for information that his land has been taxed, and when and where it will be sold for taxes, if he fails to pay. He has ample opportunity to appear before the officers and boards who have power to grant relief from grievances. He also has ample remedies under the Code of Civil Procedure to obtain relief from any prejudicial error or irregularity at almost any stage of the tax poceedings while it is in fieri. Under such circumstances, it is plain to be seen that the legislature has ample power, as we held in Beggs v. Paine, 100 N. W. 322, to fix a reasonable time within which a person, claiming to have been aggrieved by a tax or tax sale of real estate, should make his objection known under peril of being forever barred. A judgment of the court was not necessary, nor was it necessary that adverse possession under the tax sale should be required, or even constructive possession. Regardless of possession, actual or constructive, the person affected by the tax is chargeable with knowledge of the tax proceedings, and, if they were irregular, he had ample remedies and abundant opportunity to resort to them. If he fails to avail himself of his remedies in a reasonable time, he is in no position to complain because his laches are taken to be conclusive evidence that he has no grievance. Beggs v. Paine, 109 N. W. 322, and cases cited.

It follows from what has been said that the legislature could have dispensed with the requirement that there be a proceeding in court and a judgment before the sale, and instead thereof could have declared that, unless the validity of these old taxes was called in question in an action commenced before a given time after the passage of the act, the taxes appearing in the list should be conclusively presumed to be valid, and the lands should be sold therefor. It is self-evident that, if the legislature had power to dispense with the proceedings in court, it likewise had the power to declare that the absence of, or any irregularity in, such intermediate proceedings, should not be fatal to the sale. The act was approved and took effect in March, 1897. It required the proceedings to be instituted forthwith, but provided that no sale should be held thereunder until after November 1, 1897. As before stated, under our system of real estate taxation no owner of land affected by the act could be heard to say that he did not know

that the proceedings would be instituted against his land under this act, if he had failed to pay the taxes which the proceedings were designed to enforce. The county authorities were required to institute an action, and it was not only the privilege but the duty of any person interested to come forward and contest the validity of the taxes in that proceeding. The proceeding in court, however, was not so much for the benefit of the taxpayer as it was for the convenience of the county. The object of the single proceeding in court against all the delinquent land was evidently to secure a speedy determination of all controversies in one proceeding, instead of having a multiplicity of suits instituted against the county or state at different times and subject to the delay incident to the usual rules of procedure. To further safeguard the rights of taxpayers, however, the privilege was extended to them to contest the validity of the taxes or of the sale at any time within three years after a sale under the judgment, if they could show that any condition prerequisite to the court's jurisdiction to render judgment was wanting. In so far as the law extended this privilege it was an act of grace, and not the recognition of any absolute right of the persons adversely affected by the sale.

A sale under a judgment in these proceedings cannot be likened to the ordinary sale pursuant to judicial proceedings. In such sales the right to sell is based exclusively on the jurisdiction of the court to render the judgment or make the order by virtue of which the sale is made. If the judgment or order was made without jurisdiction, the sale is void, and no legislative fiat can make it valid. Neither can cases like Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410, involving tax laws like the Oregon statute involved in that case, have any application to a real estate tax proceeding in this state. That case is cited and distinguished in State Finance Co. v. Mather, 109 N. W. 350. The validity of a tax sale like that involved here does not depend upon the jurisdiction of the court to render judgment, except so far as the legislature has seen fit to so declare. The judgment was a mere intermediate step required by statute before the sale. The jurisdiction to sell is based on the fact that the land was liable to a tax that had been imposed. If the judgment was regularly obtained, it would be conclusive evidence that there was a valid unpaid tax; but, if the judgment was rendered without jurisdiction, it would have no effect, and in that event the tax would stand or fall as it might prove to be good or bad. So far as any constitutional right

is concerned, it was imaterial whether the court had jurisdiction or not to render judgment. The land was sold for an unpaid tax which was presumptively valid. The law afforded the respondent ample remedies and abundant time to resort to them to attack the sale, if it was invalid. His failure to act within the time limited is a complete bar against the irregularities he now complains of. Had the claim been that there was no unpaid tax for which the legislature could have authorized the sale, or had it been shown that the alleged taxes for which the sale was made were utterly void, in the sense that they were beyond the reach of any curative or limitation act which the legislature had power to pass, then a different question would arise. It would then be a question not merely as to the jurisdiction of the court to render judgment, but of jurisdiction of the taxing power.

It is evident that, notwithstanding the sweeping language of the statute, there might be defects shown which could not be cured by a statute of limitations which does not require adverse possession. As to such defects, this section would be of no effect. No such defect, however, is shown in this case. It is not claimed that the land was exempt from taxation, or that there was no tax, or that the tax had been paid before the sale. The sale was made for the taxes of two different years. No question is made as to the validity of the taxes for one of these years. There was therefore jurisdiction in the legislature to authorize a sale. Hence, the fact that the taxes for one of the years were void would not vitiate the sale after the lapse of the time limited for questioning it. This is not in conflict with any of the several decisions of this court holding that a tax sale or tax deed, void by reason of some jurisdictional defect, cannot become valid by mere lapse of time. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049; Power v. Kitching, 10 N. D. 260, 86 N. W. 737, 88 Am. St. Rep. 691; Sweigle v. Gates, 9 N. D. 539, 84 N. W. 481, and others. The jurisdictional defects, which cannot be thus barred without adverse possession, consist of the nonperformance of some of those things which are inherently or constitutionally necessary to a tax sale. The nonperformance of some act which is not inherently or constitutionally necessary to the right to sell, but which the legislature in its discretion may or may not require, is not a "jurisdictional defect," as that term is used in construing and applying statutes of this character. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049. The language

used in Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188, is inconsistent with this statement, but we expressly disapproved it in State Finance Co. v. Mather (just decided) 109 N. W. 350.

This distinction between incurable jurisdictional defects and those which are jurisdictional only to the extent that the legislature has made them so, is well stated by Judge Finch, in the opinion denying the petition for rehearing in Ensign v. Barse, 107 N. Y. 329, 346, 14 N. E. 400, 15 N. E. 401: "Our attention is called to the case of Shattuck v. Bascom, 105 N. Y. 39, 12 N. E. 283. We there held a defect in the assessor's affidavit fatal to the assessment. We did not speak of the defect as jurisdictional, though, if we had, no collision of authorities would have resulted. The opinion in the present case is careful not to deny a possible fatal result of the defect, although it is rather formal than substantial, but for the curative effect of the statute of 1882, which had no parallel in any form in the facts of the cited case. In the opinion then delivered, the defect was not deemed jurisdictional in any other sense than the modified one of an essential condition under the law as it stood. Whether it was so jurisdictional as that the legislature could not have dispensed with it, and therefore could not cure its omission, is a very different inquiry. A defect may be in one sense jurisdictional relatively to the authority of the assessors acting under an existing law, and yet not so as it respects the power of the legislature to pass a statute curing the defect; and it is only by confusing these two things, which the opinion separated, that a seeming contradiction can be reached."

In each of the several cases on this subject in this state, it will be found that the court held that there was no assessment, or that there was no levy. As stated above, neither of these essentials to the existence of a tax could be barred by a limitation act without adverse possession. Neither does this decision conflict with the views expressed in Emmons County v. Bank, 9 N. D., at page 595, 84 N. W. at page 383. That was an attack upon a sale under the "Woods Law" made within three years after the sale, and the section we are construing had no application. We fully agree with the views expressed in that case to the effect that, if the judgment was void, it concluded nothing and left the parties in the same position as if there had been no adjudication. The same is true in this action. We are assuming for the purposes of this opinion that the judgment is void and has no effect as an adjudication, and

hence that the plaintiff is free to attack the validity of the sale for any jurisdictional defect which this limitation act in question does not bar. We hold merely that the rendition of a valid judgment is not a jurisdictional act inherently necessary or required by the constitution as a condition precedent to the right of the legislature to authorize a sale or forfeiture; but is merely a legislative requirement having only such force and effect as the legislature has seen fit to give to it. It is manifest that if a valid judgment was an indispensable condition precedent to the right to sell, then this limitation feature of the "Woods Law" is meaningless. No sale would be affected by the limitation, unless it was preceded by a valid judgment. In other words, the section would bar attacks upon those sales only which do not require such protection. Had it been shown that the judgment was void on its face, and hence afforded no ostensible authority to sell, a different question would be presented.

It is urged that the legislature has no power to bar the rights of the owner of unoccupied land to question the validity of a tax sale without adverse possession on the part of the tax purchaser. There are two cases which have so held unqualifiedly. In Groesbeck v. Seeley, 13 Mich. 329, 343, it is said: "A person who has a lawful right, and is actually or constructively in possession, can never be required to take active steps against opposing claims. The law does not compel a man who is unassailed to pay any attention to unlawful pretenses which are not asserted by possession or suit. When such a title is set up, he has a right to defend himself, by jury, if the claim is one of common-law cognizance, or otherwise if of a different nature. But to hold that, under any circumstances, a man can be deprived of a legal title without a hearing, is impossible without destroying the entire foundations of constitutional protection to property. No one can be cut off by limitation until he has failed to prosecute the remedy limited, and no one can be compelled to prosecute when he is already in possession of all that he demands." In Baker v. Kelly, 11 Minn. 480 (Gil. 358), this doctrine is approved. It seems that both in Michigan and Minnesota, when these decisions were rendered, there was no action maintainable by which an adverse claim could be litigated, unless one party or the other was in possession of or trespassed upon the land. Ejectment would lie only in case of disseisin. A suit to quiet title could be maintained only

by one in possession. Hence, unless the original owner was in possession, or the tax-title purchaser either took possession or trespassed on the premises, there was no action maintainable by the original owner in which to test the adverse claim. If there was no remedy available to test the adverse claim, it is plain, as we have hereinbefore said, that the limitation law would not apply. To that extent we agree with these decisions. But we think the reasoning which we quoted above from the Michigan case is as unsound in principle as it is unsupported by authority. The power of the legislature is denied by those decisions to impose upon a claimant of unoccupied land the duty to seasonably challenge an adverse claim arising under a tax sale of which he has notice, unless the adverse claimant invades the premises; and it is further denied that the legislature can make such neglect to challenge the known adverse claim conclusive evidence that the tax sale was valid. The legislature has plenary power, and all its enactments are binding upon those affected by them, unless the act is in contravention of some state or federal constitutional limitation.

It is claimed that such an enactment violates the constitutional provisions with respect to due process. What element of due process is lacking in such an enactment in this state? As already shown, the landowner has at least constructive notice of the tax proceedings and the sale; and, as a matter of fact, we all know from experience that it would be a rare case indeed in which the landowner or his legal representative would not have actual knowledge that the sale had been made. Under our system of procedure, there are ample remedies by action to test the validity of the sale, whether the land is occupied or not. It cannot be denied that three years' time affords abundant opportunity to invoke them. The power of the legislature to require the original owner of unoccupied land to resort to an available action to challenge the validity of a tax sale of which he has notice is sustainable on precisely the same principles which support its authority to ripen an adverse possession into conclusive evidence of title. A tax sale is an official act which is presumptively valid, and hence prima facie divests the original owner's title and right to possession. So, also, adverse possession has the same effect. In either case the land-owner is chargeable with notice of the adverse claim, and remedies are available to him to attack the validity of the presumptively law-

ful adverse title. In either case the original owner has the burden of showing that the adverse claim is invalid. It violates no essential of due process of law to declare that the presumptively valid adverse claim shall become conclusive, if the landowner neglects to challenge it within the prescribed time. Whether or not this would be true, if the original owner had retained actual possession, we do not decide. The land in question is unoccupied.

The weight of authority is opposed to the doctrine expressed in these cases just mentioned. In Pennsylvania, when there was no action maintainable under the procedure of that state, if the land was unoccupied it was held that such a limitation act could not apply to vacant lands. Waln v. Shearman, 8 Serg. & R. (Pa.) 357, 11 Am. Dec. 624. After the legislature had provided a remedy in such cases, the limitation was given full effect, whether the land was occupied or not. Robb v. Bowen, 9 Pa. 71; Stewart v. Trevor, 56 Pa. 374. See, also, cases in Black on Tax Titles, section 496, from Wisconsin, Iowa and Kansas. In these states it was held that the original owner of unoccupied land was barred because the grantee in the tax deed was in constructive possession; and because in those states an action was maintainable under such circumstances. See, especially, Hill v. Kricke, 11 Wis. 442, cited in Leffingwell v. Warren, 67 U. S. 599, 17 L. Ed. 261. In New York short statutes of limitation substantially the same as the one now in question have been before the courts of that state, and have been uniformly sustained. Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401; People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498; Id., 145 N. Y. 451, 40 N. E. 400. The New York decisions on this question have been approved by the United States Supreme Court. Turner v. People, 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; Saranac Land Co. v. Roberts, 177 U. S. 318, 20 Sup. Ct. 42, 44 L. Ed. 786. Inasmuch as this question is a federal one arising under the fourteenth amendment, these decisions must be followed, even if we had any doubt on the subject.

We have not overlooked the numerous Minnesota cases cited by counsel in support of the argument that a void judgment defeats the limitation. Sanborn v. Cooper, 31 Minn. 310, 17 N. W. 856; Knight v. Alexander, 38 Minn. 384, 37 N. W. 796, 8 Am. St. Rep. 675; and others. Although the limitation provisions of the several revenue laws of that state involved in those decisions were sub-

stantially the same as the section of the "Woods Law" in this state, we cannot follow the Minnesota cases on this question without doing violence to what we deem to be elementary principles. It is true that the "Woods Law" was patterned after similar laws in Minnesota. If the language of the section in question were at all doubtful in meaning, or if we had any doubt as to the principles applicable to such laws, we would feel constrained to follow these decisions to the extent that they purported to construe the law, even though they did not coincide with our views. The section in question, however, is plain and wholly free from ambiguity so far as the limitation feature of it is concerned. There is no room for interpretation. We must give effect to the law to the extent that it is not in conflict with any constitutional provisions. For the reasons hereinbefore stated, we find no constitutional objection to its application to the facts of this case. We think the fallacy of the Minnesota cases lies in the failure of that court to notice and give effect to the distinction between the judgment required by the legislature in the course of the tax proceedings and a judgment or decree in an ordinary civil action or proceeding.

It remains to consider whether the respondent's right of redemption has been terminated. The "Woods Law" did not provide for any tax deed. Section 14 of the act (section 1344, Rev. Codes 1899) provides that the certificate shall operate as a deed after the time for redemption has expired. Redemption was to be affected by payment to the county treasurer of the amount of the purchaser's bid with interest, together with subsequent taxes. Section 1350, Rev. Codes 1899. If redemption was made, the county treasurer was required to execute and deliver to the redemptioner a certificate showing the fact, which certificate could be recorded in the office of the register of deeds, and the original or the record thereof was evidence of the fact of redemption. Section 14 provides: "That the holder of any certificate * * * must, ninety days preceding the maturity of such certificate, give personal notice to the owner, if a resident of the state, of the expiration and maturity of such certificate, and if the owner is a nonresident of the state, such notice may be given by registered letter, addressed to such owner, at his last known post office address; and in case the property covered by such certificate is occupied, then service of such notice shall, in addition to the foregoing provisions, be made upon the person in possession thereof,

and by puplication of notice of the maturity of such certificate in some newspaper published in the county where the land is situated, or otherwise as hereinbefore provided, for at least thirty days preceding the expiration and maturity of such certificate; and the owner may redeem such certificate by paying the amount named therein, together with accrued interest and costs. Proof of notice here provided for must be filed in the office of the clerk of the district court prior to the maturity of such certificate. The fee simple of any piece or parcel of land named in any certificate shall not vest in the holder thereof until the notice provided for herein is given and due proof thereof filed with the clerk of the district court." In this case it was admitted that the plaintiff was a nonresident of the state, and that the land was unoccupied. The affidavit of William H. Beck, which was filed with the clerk of court November 17, 1900, in proof of service of the notice of expiration of redemption, shows that the notice was sent to respondent by registered mail, addressed to her at Detroit, Mich., her last known post office address, on August 17, 1900. The letter was mailed at Boston, Mass., where Beck resides. The notice describes the land, gives the date of the sale, the amount bid, the number of the certificates, and states that the time to redeem will expire on November 21, 1900. The notice is clearly sufficient. There is nothing in the law which requires the notice to be mailed at a postoffice within this state. The affidavit of mailing was competent evidence to prove the service. The proof of service, required by section 1344 to be filed, clearly contempates the usual proof in such cases. Section 5669, Rev. Codes 1899, makes such an affidavit competent evidence to prove service of notice. It was not necessary to file with the clerk proof that the land was unoccupied. The law merely requires that proof of the service of the notice be filed. Whether the service as proved is sufficient or not depends upon the fact whether the land was occupied or not. It is admitted that it was unoccupied.

It is finally contended that the prof is insufficient to prove title because the defendant did not prove that there had been no redemption. If the sale had been canceled by redemption, it was incumbent on plaintiff to prove that fact by the production of the certificate of redemption, or other evidence. It is no more incumbent on the tax purchaser to prove nonredemption than it would be for a plaintiff in a foreclosure suit to prove that the mortgage had

not been paid. It is not pretended that there was in fact any redemption, and the attempt to show the invalidity of the sale is in effect an admission that no redemption had been made. The cases of Greve v. Coffin, 12 Minn. 345 (Gil. 263), 100 Am. Dec. 229, and Sheehy v. Hinds, 27 Minn. 259, 6 N. W. 781, are not in point, even if their soundness were conceded. Those cases hold that the proof of nonredemption was by the statute there involved made a condition precednt to the right to use a tax deed as prima facie evidence of title. See Stewart v. Colter, 31 Minn. 385, 18 N. W. 98.

The judgment is reversed, and the trial court will enter judgment in the usual form that the plaintiff, Nind, and defendant Myers have no estate or interest in the land, and that the title thereto be adjudged to be in defendant William H. Beck, and that his title be quieted; the appellant Beck to recover from respondent taxable costs and disbursements of both courts..

YOUNG, J., (dissenting). I am unable to agree with the conclusion of my associates that the defendant acquired title to the premises in question through the proceedings under the void tax judgment. It is conceded that the title to the premises is in the plaintiff, unless it was divested and transferred to the defendant Beck through his purchase at the tax judgment sale on November 21, 1897, and the plaintiff's failure to redeem therefrom. So, too, it is conceded that the tax judgment pursuant to which the sale was made was void for want of notice. The defendant, in support of his claim of title, offered only the sheriff's certificate and proof of service of notice of expiration of the redemption period. From these facts the conclusion is drawn in the majority opinion that the plaintiff has no estate in or title to the premises, and it is adjudged that the title is in the defendant. This conclusion rests entirely upon section 15 of chapter 67, p. 85, Laws 1897 (section 1345, Rev. Codes 1899). The opinion holds that a sheriff's certificate of sale, which is regular upon its face, is, when three years have elapsed from the date of the sale, conclusive evidence, both of a valid judgment and a valid sale, or, in other words, that after that time the original owner cannot defend his title by showing that the judgment and the sale pursuant to which the sheriff's certificate was issued were in fact void. I cannot assent to this conclusion. The sale in question was made to satisfy a tax judgment entered under chapter 67, p. 76, Laws 1897, commonly known

as the "Woods Law." It was a judicial sale, and not a sale under the general revenue law, and was made to satisfy the alleged tax judgment. The judgment was void. The property was not described in the published notice through which the court acquires jurisdiction in such cases. The judgment was therefore entered without jurisdiction, and was void. This is conceded. I take it that it must also be admitted that the sale was void for the same reason. The rule of law applicable to such judgments and sales is stated in Freeman on Void Judicial Sales, section 2, as follows: "A void judgment order or decree, in whatever tribunal it may be entered, is nothing. All acts performed under it, and all claims flowing out of it, are void. Hence a sale based on such a judgment has no foundation in law. It must certainly fall." See, to the same effect, Kleber's Void Judicial Sales, sections 194, 452; Rorer on Void Judicial Sales, section 488; Freeman on Judgments, section 117; 1 Black on Judgments (2d Ed.) section 170, and cases cited. The conclusion of my associates that the original owner cannot now defend his title by alleging the invalidity of the sale, and that the title is now in the purchaser under the void tax judgment, is based upon three propositions: (1) That section 1345 makes the sheriff's certificate of sale prima facie evidence, not only that the proceedings connected with the sale were regular, but also that the judgment was regularly rendered and entered; the certificate thus establishing prima facie a valid judgment and a valid sale. (2) That the latter part of the same section, which limits attacks upon and defenses against such sales to three years, applies to all sales, including sales made under void judgments, and that such a sale sets the statute running against the owner and bars his right to defend his title by alleging the invalidity of the sale after three years. And (3) that the statute as thus construed, and as applied to a sale like that here in question, is valid. I am unable to agree to either of these propositions, and will give my views as to each of them, in the order in which they have been stated.

First, as to the evidentiary force of the sheriff's certificate: The majority opinion holds that, for three years after its issuance, it is prima facie evidence, and after that time is conclusive evidence, both of the regularity of the proceedings connected with the sale, and of the regularity of the rendition and entry of the judgment. I do not find that the statute gives the certificate any evi-

dentiary force whatever as to the judgment. Section 1345 declares that "the certificate shall in all cases be prima facie evidence that all the requirements of law with respect to the sale have been duly complied with. * * *" It does not declare that it is prima facie evidence that all of the requirements of law with respect to the judgment have been complied with. The certificate has, of course, only such force as is given to it by the statute. The statute confines its evidentiary force to the requirements of law with respect to the sale, and we are not warranted in extending the statute by construction so as to make it cover the judgment. The judgment is no part of the sale proceedings. It is antecedent and independent; essential, it is true, to a valid sale, but is no part of the sale. As is well known, chapter 67, p. 76, Laws 1897, was adopted almost bodily from the state of Minnesota. Many of its provisions, including the successive provisions of the Minnesota statute, corresponding to those contained in our section 1345, had received a settled construction in that state long prior to their adoption here. In construing a corresponding section of the Minnesota statute, in Sanborn v. Cooper, 31 Minn. 307, 17 N. W. 856, the court, speaking through Judge Mitchell, said: "Defendant offered in evidence a certificate of sale purporting to have been made pursuant to a tax judgment by the county auditor * * * to the admission of which plaintiff objected on the ground that no evidence had been offered of any tax judgment or of any authority to the auditor to make the sale. The court overruled the objections and admitted the certificate. * * * On this state of facts, the court found as conclusions of law that defendant was the owner in fee simple of the premises, and that plaintiff had no interest or title therein, and ordered judgment accordingly. The ground upon which the decision was put is that, no action having been brought to set aside or test the validity of the tax sale within five years, the title of the purchaser at such sale became absolute and cannot now be questioned. The sale was made under the general tax law of 1874, as amended by Laws 1875, p. 36, c. 5, section 30, the important provision of which is as follows: 'Section 125. Such certificate, or the record thereof, shall in all cases be prima facie evidence that all the requirements of the law in respect to the sale have been complied with, and no sale shall be set aside or held invalid unless the party objecting to the same shall bring his action to set aside such certificate, or

to test the validity of such sale within five years from the date of the sale.' It is elementary that, according to the common-law rule, this certificate would be inadmissible without proof of the authority of the auditor to make the sale. To sustain a conveyance executed by an attorney under a power of attorney, by an executor under a will, by a sheriff under an execution, by a guardian or administrator under an order of court, by a commissioner under a decree of court, the power of attorney, the will, the judgment and execution, and the decree must be first produced and put in evidence. If this certificate is prima facie evidence of any of the precedent acts necessary to clothe the auditor with authority to sell, it is only so by force of the statute, and only to the extent it is expressly made so. But this statute only makes the certificate of sale prima facie evidence 'that all the requirements of the law in respect to the sale' have been complied with, but not of the precedent acts necessary to authorize the auditor to make the sale. It is not made prima facie evidence of the tax judgment, which is the source of his authority to sell. This would have to be first proved aliunde, as before. The extent of the effect of the statute is merely to make the certificate prima facie evidence of the regularity of the proceedings connected with the sale itself, such as the giving of notice of the time and place of sale, the fact of sale, and that it was conducted in the manner required by law, and the like. That this is the extent to which it goes is, we think, almost self-evident from the language of the statute itself. * * * The defendant insists, however, that this rule is somehow changed or inapplicable, from the fact that the so-called statute of limitations has run; the action not having been brought within five years after the sale. But this is not a question of the statute of limitations, but of the competency of evidence. How can the fact that the statute has run render that competent which before would have been incompetent? The trouble is the statute is not broad enough for defendant's purposes. It needs a tax judgment behind it to set it in motion. Until she proves a tax judgment authorizing a sale, she can never reach a point to invoke the application of the statute. See Dawson v. Helmes, 30 Minn. 107, 14 N. W. 462. Had she proved such a judgment, she might be in position to successfully insist that plaintiff was not entitled to have the sale or certificate set aside on account of an omission to comply with any of the requirements of

law respecting the sale. But the case now stands precisely as if she had introduced no evidence, because she has produced no competent evidence."

The above case was decided in 1883, and the construction there announced has been repeatedly reaffirmed. In my opinion no reason exists for not following it. The rule which governs the construction of a statute adopted from another state is familiar. It will be presumed that the legislature adopted it with the construction which had been given to it. 2 Lewis & Suth. Stat. Con. (2d Ed.) section 404, and cases cited. In adopting this construction we are giving effect to the intent of the legislature, and observing a well-settled rule of statutory construction. 26 Am. & Eng. Enc. Law, 100, and cases cited. This court has repeatedly applied this rule of construction to other provisions of this same act. Wells Co. v. McHenry, 7 N. D. 246-259, 74 N. W. 241; Cass Co. v. Security Imp. Co., 7 N. D. 528, 535-537, 75 N. W. 775; Emmons Co. v. Lands, 9 N. D. 583, 596, 84 N. W. 379. Our statute shows no such change of language as would suggest an intent that it should have a different meaning than had been given to the parent statute. It follows from this view that the defendant, by introducing in evidence only the certificate and proof of notice of expiration of redemption, did not establish, even prima facie, title in the defendant. Proof of a valid tax judgment was essential.

The majority opinion is in error in stating that "this question was decided in Cruser v. Williams, 13 N. D. 284, 100 N. W. 721." In that case the entry of the tax judgment was conceded upon the record. Having been entered by a court of general jurisdiction, the presumption of regularity arose from that fact. The question as to whether the certificate standing alone is proof of the entry was not involved, neither was it discussed or decided. The question we have been considering, however, in no event is decisive in favor of the majority conclusion in this case, for, as previously stated, it was affirmatively shown and is conceded that the judgment was in fact void. And this brings me to the second question, which relates to the latter part of section 1345, which reads as follows: "And no sale shall be set aside or held invalid, unless the party objecting to the same shall prove, either that the court rendering the judgment pursuant to which the sale was made, had not jurisdiction to render the judgment, or that after the judgment and before the sale such judgment had been satis-

fied, * * * and the validity of any sale shall not be called in question unless the action in which the validity of the sale shall be called in question shall be brought or the defense alleging the invalidity be interposed within three years from the date of sale. A sale shall be deemed completed within the provisions of the article when the certificate thereof has been issued by the sheriff." The majority opinion holds, directly, that the limitation feature just quoted is applicable to sales under void judgments, and that, pursuant to its provisions, the sheriff's certificate, coupled with a notice of expiration of the redemption period, becomes in three years an unassailable muniment of title, which is thereafter wholly impregnable to an attack by the true owner, and against which he cannot urge in defense of his possession and title that the judgment and sale were in fact void. In my opinion the limitation provision of the section, which is above quoted, and this seems to be the basis of the majority opinion, has no application to void sales such as this. A void judgment is no judgment, and a void sale is no sale. The statute does not apply to void sales. As to such sales the statute does not commence to run, for there is nothing for it to operate upon. Such, and for reasons which will hereafter appear, and I think there is no exception, is the construction given to similar statutes. This construction gives effect to the statute as an effective means of barring attacks for defects in the proceedings which are commonly classed as irregularities, and does not take away from the true owner the right to urge that the sale was void for jurisdictional reasons. And, by thus excepting void sales from its operation, is observed that ancient and familiar maxim of the law, which is reaffirmed in section 5101 of our Code, that "time does not confirm a void act." And the statute is saved from the condemnation of the further rule that even the legislature cannot infuse life into that which is dead.

In Sweigle v. Gates, 9 N. D. 543, 84 N. W. 482, this court said: "It is well settled that tax deeds which are upon their face void for jurisdictional reasons do not operate to start the statute of limitations running; and it is also well settled both upon principle and authority that, where an officer executing a tax deed was without jurisdiction so to do, such deed will not start the limitation running, even if the deed be entirely regular upon its face." The decisions of this court are in harmony upon this question. Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049; Sheets v. Paine, 10 N. D. 106,

86 N. W. 117; Hegar v. DeGroat, 3 N. D. 354, 56 N. W. 150; Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188; Power v. Kitching, 10 N. D. 254, 86 N. W. 737, 88 Am. St. Rep. 691. So, too, in Kansas a void deed does not set the statute in motion. Shoat v. Walker, 6 Kan. 65, 75; Sapp v. Morrill, 8 Kan. 677, 685; Taylor v. Miles, 5 Kan. 515, 516, 7 Am. Rep. 558; Bowman v. Cockrill, 6 Kan. 337; Hall's Heirs v. Dodge, 18 Kan. 277; Hubbard v. Johnson, 9 Kan. 632. See, also, Millar v. Babcock, 29 Mich. 525; Gomer v. Chaffee, 6 Colo. 317; Moore v. Brown, 11 How. (U. S.) 414, 13 L. Ed. 751; Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 331; Walker v. Turner, 22 U. S. 541, 6 L. Ed. 155; Kelly v. Herrall (C. C.) 20 Fed. 364; Bannon v. Burnes (C. C.) 39 Fed. 895. This also was the holding of the United State Circuit Court of Appeals for the Eighth Circuit, in a case arising under the Arkansas statutes (Alexander v. Gordon, 41 C. C. A. 228), in which it was held that a sale for an excessive amount was open to attack after the statutory period, upon the ground that the sale was void. For substantially the same reasons as controlled in the cases above cited, it was held under an early statute in Pennsylvania, which in terms commenced to run from "the sale," did not attack and commence to run, even when the sale was not void, until the tax deed was issued, and possession taken under it by the purchaser. Waln v. Shearman, 8 Serg. & R. 357, 11 Am. Dec. 624. So, in Iowa, it was held that a statute which in terms commenced to run from "the sale" did not attach until the tax deed was executed and recorded, which was three years later, and this construction was adopted upon the ground that any other construction would make the statute "both unjust and unconstitutional." Eldridge v. Kuehl, 27 Iowa, 160; McCready v. Sexton, 29 Iowa, 356, 4 Am. Rep. 214. The decisions of the Supreme Court of Minnesota are directly in point, and, in my opinion, are controlling. That court has repeatedly held, in construing the statute from which ours was borrowed, that a sale under a void tax judgment does not set the statute of limitations in motion. Sanborn v. Cooper, 31 Minn. 307, 17 N. W. 856; Feller v. Clark, 36 Minn. 338, 31 N. W. 175; Kipp v. Fenhold, 37 Minn. 132, 33 N. W. 697; Knight v. Alexander, 38 Minn. 384-388, 37 N. W. 796, 8 Am. St. Rep. 675; Smith v. Kipp, 49 Minn. 119, 125, 51 N. W. 656; Whitney v. Wegler, 54 Minn. 235-238, 55 N. W. 927; Farnham v. Jones, 32 Minn. 7, 19 N. W. 83; Holmes v. Loughren (Minn ) 105 N. W. 558.

The recent case of Holmes v. Loughren, supra, involved substantially the same questions as are presented in this case. A sale had been made under a tax judgment, which, like the judgment in this case, was void because of the insufficiency of the description of the property in the notice. The proceedings were under the charter of the city of Duluth. The plaintiff, the tax purchaser, relied upon a three-year statute of limitations. The court held, in accordance with the general rule and its previous decisions, that "a statute of limitations is not put in operation in favor of a party claiming under a tax judgment sale, unless there is behind it a valid tax judgment." An accurate statement of the construction which has always prevailed in Minnesota will be found in the following quotation from the opinion in the above case: "The provisions of the charter of the city of Duluth provided that no tax sale shall be set aside or held invalid, unless the action in which the validity of the sale shall be called in question be brought within three years from the issuance of the deed. It is the contention of the plaintiff that this statute prevents the defendant from now questioning the validity of the tax judgment and sale, as this action was not brought within three years after the issuance of the deed. It is to be noted that this case is essentially one to determine the title to the lot in question, that the defendant is the absolute owner of it unless his title has been divested by the tax proceedings, that his fee title carries with it the constructive possession of the lot; and, further, that if the statute applies to an action of this kind, and judgment be given for the plaintiff that he and not the defendant is the owner of the lot, the defendant is absolutely deprived of his property because he did not bring an action to vindicate his right to the continuance of the uninterrupted enjoyment of his property against a void claim existing only on paper. If statutes of this kind are to be construed as applicable to any action, no matter what its form may be, in which the title to the property will be finally and conclusively determined by the judgment, would they be constitutional? Baker v. Kelley, 11 Minn 480 (Gil. 358); Feller v. Clark, 36 Minn. 338-340, 31 N. W. 175. This is a serious question which we do not decide, for the reason that, no matter whether the statute, if construed as applicable to actions of this kind would be valid or not, it cannot be invoked in this case. A statute of limitations is not put in operation in favor of a party

claiming under a tax sale, unless there is a valid tax judgment behind it. Where there are jurisdictional defects in tax proceedings, the recording of the tax deed will not set limitations running, and it is immaterial whether such defects appear on the face of the deed or aliunde. Jaggard on Taxation, 744; Sanborn v. Cooper, 31 Minn. 307, 17 N. W. 856; Feller v. Clark, 36 Minn. 338, 31 N. W. 175; Kipp v. Fernhold, 37 Minn. 132, 33 N. W. 697; Knight v. Alexander, 38 Minn. 384-388, 37 N. W. 796, 8 Am. St. Rep. 675; Smith v. Kipp, 49 Minn. 125, 51 N. W. 656; Whitney v. Wegler, 54 Minn. 235, 55 N. W. 927. The alleged tax judgment in this case was void. Hence the statute does not prevent the defendant from asserting the invalidity of the tax sale."

In my opinion, no reason exists for refusing to follow a construction so well settled, and this without regard to our individual views as to its correctness. In following that construction, as previously stated in reference to another part of the same section, we give effect to the intent of the legislature, and, as we have seen, it is in harmony with the construction which this court and the courts generally have placed upon similar statutes. An examination of the cases will disclose that the controlling reason for restricting the operation of such statutes to voidable sales and deeds, and exempting those which are void for jurisdictional reasons, is that, unless they are thus restricted, they could not be sustained. And this presents the third question: Can the latter part of the section, which limits attacks upon and defenses against sales to three years from the date of sale, be upheld, as applied to void sales, or, as in this case, to a sale under a void tax judgment? In the majority view there is no constitutional objection to this construction and application of the statute, and that, in depriving the true owner of the right to defend his possession and title as against the void judgment and sale, and confirming the title of the tax purchaser, as is done in this case, no right guaranteed to the owner by the constitution is violated. It is said in the opinion that, under section 1345, "want of jurisdiction is not available as an objection to the sale unless urged in an action brought before the expiration of three years, * * *" and that, if the sale is not attacked before that time, "the certificate becomes conclusive evidence of a valid sale," and the majority held that the legislature may constitutionally effect this result "by declaring that after a stated time a conclusive presumption of regularity

shall arise in favor of the proceeding." And the question is squarely presented: "Did the legislature violate any constitutional limitation upon its powers in declaring that the sale should be conclusively presumed to be valid after three years, even though the court had no jurisdiction to render judgment pursuant to which the sale was made, and even though there had been no adverse possession of the land by any one claiming under the sale?" This question my associates answer in the affirmative. It will be seen from the statement in the majority opinion, and it is not contended otherwise, that, if the plaintiff's title is divested, it is solely by virtue of the legislative declaration contained in section 1345. It is not pretended that it was divested by the proceedings taken under the "Woods Law," for they were void. This result is accomplished by the legislative fiat, "declaring that after a stated time a conclusive presumption of regularity shall arise in favor of the proceeding," thereby making the certificate "conclusive evidence of a valid sale."

That it is not within the power of the legislature to thus preemptorily close the doors of the court to suitors, urging in defense of their property the fact that the proceedings by which it is being taken are void for jurisdictional reasons, is, I think, well settled. This right to a hearing in the courts upon such a question is guaranteed to them by section 13 of the state constitution, which declares that: "No person shall * * * be deprived of life, liberty or property without due process of law"—and also by the corresponding provision of the federal constitution. This right the legislature cannot take away. It is sometimes a question of some difficulty to determine whether the particular procedure by which the property of a citizen is being taken is or is not "due process of law." But a discussion of that question is not necessary here, for, in this case, it stands confessed that the act which deprives the plaintiff of his title and transfers it to the defendant is the declaration of the legislature found in section 1345, as construed by the majority, that this shall be done. It is not claimed that the land was sold, or that it is being taken under the general revenue law. The only proceedings taken were under the "Woods Law," and they were wholly void. And it is conceded that the only efficient power divesting the plaintiff's title is the legislative declaration contained in section 1345. I take it to be well settled upon reason and authority that a legislative act

which in effect and of itself transfers the property of one person to another, is not "due process of law." The fact that a tax is involved does not alter the case. The guaranty to the citizen of the protection of due process, before his property shall be taken from him is not merely against a taking by another person. It applies to a taking by the state as well as by individuals. And it matters not that the purpose of the taking was to satisfy an alleged tax, for the taxing power itself must observe the rights of the citizen and accord to him "due process of law." If this were not so, the constitutional guaranty of due process would afford but scant protection, and all property would be held subject to the will of the legislature. But this is not the law in my judgment, and, in order that the answer to a question of such vital importance may not rest upon my bare statement, I will quote from the opinions of others:

Judge Story, in his commentaries on the constitution of the United States (section 1784), says: "It seems to be the general opinion, fortified by a strong current of judicial opinion, that, since the American Revolution, no state government can be presumed to·possess the transcendental sovereignty to take away vested rights of property; to take the property of A. and transfer it to B. by mere legislative act. That government can scarcely be deemed to be free where the rights of property are left solely dependent upon a legislative body without any restraint." In People v. Supervisors, 4 Barb. (N. Y.) 75, it was said: "Upon principle, as well as upon authority, a legislative act which takes away the vested rights of property of an individual for any purpose * * * is to be adjudged invalid as being above the power and beyond the scope of legislative authority." And, in Lane v. Nelson, 79 Pa. 407: "It is settled by a current of authority that the legislature cannot by an arbitrary edict take the property of one man and give it to another, and that when it has attempted to be taken by a judicial proceeding as a sheriff's sale, which is void for want of jurisdiction, it is not in the power of the legislature to infuse life into that which is dead." Likewise, in McDaniels v. Correll, 19 Ill. 226, 68 Am. Dec. 587: "It is not within the power of the legislature to make a void foreclosure valid. * * * Upon this question we cannot for a moment doubt or hesitate They can no more impart a binding efficacy to a void proceeding than they can take one man's property from him and give it to

another. Indeed, to do one is to accomplish the other." See, also, in Conway v. Cable, 37 Ill. 82, 87 Am. Dec. 240, in construing a curative act and its effect upon a void tax sale, it was said: "To give it force, therefore, would be to transfer the property of the former owner, not by force of a valid and binding sale for taxes, but by the declared will of the legislature that his title should pass from him and vest in the purchaser at a tax sale which conferred no right. This the legislature has no power to do, whether by direct or positive action, or by rendering valid and binding acts which were nugatory."

It will be noted that section 135, as construed by the majority opinion, is not different from statutes which declare in terms that a tax sale shall be conclusive evidence that all steps prerequisite to its issuance have been taken. It is authoritatively settled that such statutes are unconstitutional as applied to jurisdictional steps, and they are sustained only to the extent of during "irregularities." This court so held in Dever v. Cornwall, 10 N. D. 123, 130, 86 N. W. 227, 231, in passing upon the evidentiary effect of a deed issued pursuant to a sale which was void for want of sufficient notice. The court said: "Where the notice of sale is substantially insufficient for any reason, it matters not that the statute declares that the tax deed shall be conclusive and shall convey title. Such statutes are unconstitutional, and, if upheld, would operate to transfer title to real estate without 'due process of law.' ". The rule as laid down in Cooley, Const. Lim. 454, is that: "A statute which should make a tax deed conclusive evidence of a complete title, and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property." And so the courts hold, and I believe, without exception. Roth v Gabbert, 123 Mo. 29, 27 S. W. 528; Baumgardner v. Fowler, 82 Md. 631, 34 Atl. 537; McCready v. Sexton, 29 Iowa, 356-385, 4 Am. Rep. 214; McNamara v. Estes, 22 Iowa, 246-258; Case v. Albee, 28 Iowa, 277; Groesbeck v. Seeley, 13 Mich. 329; Case v. Dean, 16 Mich. 12; White v. Flynn, 23 Ind. 46; Corbin v. Hill, 21 Iowa, 70; Abbott v. Lindenbower, 42 Mo. 162; Id., 46 Mo. 291; Little Rock R. R. Co. v. Payne, 33 Ark. 816, 34 Am. Rep. 55; Hand v. Ballou, 12 N. Y. 541; Joslyn v. Rockwell, 128 N. Y. 339, 28 N. E. 604.

The settled law upon this subject was stated by Justice Shiras, in Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410, in the following language: "It is competent for the legislature to declare that a tax deed shall be prima facie evidence, not only of the regularity of the sale, but of all principal proceedings and of title in the purchaser; but the legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot therefore make the tax deed conclusive evidence of the holder's title to the land." It is also well settled that statutes which attempt to accomplish this same result, by declaring that after a fixed time the title of the tax purchaser shall be unassailable, are void and inoperative, as against one whose possession and enjoyment has not been disturbed. Such an one is possessed of his rights, and the state cannot declare them forfeited to another whose claim is void, merely because he declines or is unable to bring suit against the holder of the claim within a fixed period. The rule upon this question is stated in Cooley on Const. Lim. (5th Ed.) 450, as follows: "One who is himself in the legal enjoyment of his property cannot have his rights thereon forfeited to another for failure to bring suit against that other within a time specified to test the validity of a claim, which the latter asserts, but takes no steps to enforce. It has consequently been held that a statute, which after a lapse of five years makes a recorded deed purporting to be executed under a statutory power conclusive evidence of good title, could not be held valid as a limitation law against the original owner in possession of the land. Limitation laws cannot compel a resort to legal proceedings by one who is already in the full enjoyment of all he claims.

Perhaps the leading case in support of the rule just stated is Groesbeck v. Seeley, 13 Mich. 329, concurred in by Judges Campbell, Cooley and Christiancy, and cited in the majority opinion. In that case the court recognized the distinction in principle and effect between limitation laws which are such in fact and statutes like that now under consideration, the effect of which, if sustained, is to divest title solely by legislative action. In speaking of the latter class of laws, the court said: "There is no principle on which such legislation can be maintained. The only manner in which a party holding a lawful and vested right in property can be prevented from asserting it against one which was not lawful in its

inception is by the operation of limitation laws. These laws do not purport to take away existing rights, although their operation may often have substantially that result. But they are designed to compel parties whose rights are unjustly withheld from them to vindicate their claims within some reasonable time. If a person, who has been ousted out of his possession or diminion, desires to regain it, he knows that he must resort to those means which are furnished by the law, either by the peaceable act of a party himself, or by legal prosecution. A limitation law simply requires him to proceed and enforce these rights within some reasonable time on pain of being deemed to have abandoned them. Such laws can only operate on those who are not already in the enjoyment and dominion of their rights. A person who has a lawful right, and is actively or constructively in possession, can never be required to take active steps against opposing claims. The law does not compel any man who is unassailed to pay any attention to unlawful pretenses which are not asserted by possession or suit. When such a title is set up, he has a right to defend himself, by jury if the claim is one of common-law cognizance, or otherwise if of a different nature. But to hold that, under any circumstances, a man can be deprived of a legal title without a hearing, is impossible without destroying the entire foundations of constitutional protection to property. No one can be cut off by limitation, until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute, when he is already in possession of all that he demands. This statute does not purport to be a limitation law. It is designed by its express terms to deprive persons of their titles, whether in possession or not, by mere lapse of time. If the proceedings to sell for taxes were illegal, no lapse of time can change their character, and they can never, therefore, become legal. If the tax purchaser obtains possession and holds it until protected by a limitation law, he then becomes safe, not because his tax title is any more regular, but because the holder of the better title has become incapable of asserting it. As an illegal tax title is a nullity, it cannot of itself divest or affect the true title in any way, and the true owner cannot be lawfully compelled to incur expense, or take active measures to get rid of it, unless he sees fit. But if he becomes ousted, whether by a pretended tax title holder, or by an adverse ·claimant, he can only secure the enjoyment of his rights by active measures, and the

party in possession may then rely on such possession until it is lawfully assailed, by suit or otherwise, within the period of limitation. In the present case, the party asserting a legal claim, against one which he claims to have been illegal, is in possession as a defendant. The other claimant is the actor and insists that, whether his tax title was legal or worthless originally, it has become good, although the defendant has not been previously ousted and guilty of delay in enforcing his title. If this tax title can be thus made indefeasible against a title in possession, by mere lapse of time, it might as well have been declared so originally. It would in either case be nothing more nor less than depriving one of his property without any legal process, and is simply confiscation by ministerial, and not judicial, action."

The doctrine laid down in the above case was approved and followed in Case v. Dean, 16 Mich. 12, and received the apparent approval of the New York Court of Appeals in Joslyn v. Rockwell, 128 N. Y. 339, 28 N. E. 604, and was expressly approved by the Supreme Court of Kansas in Taylor v. Miles, 5 Kan. 302-311, and by the Supreme Court of Minnesota in Baker v. Kelly, 11 Minn. 480 (Gil. 358), and in Feller v. Clark, 36 Minn. 338, 31 N. W. 175. In Baker v. Kelly, as in Groesbeck v. Seeley, the question was whether "the legislature can require a person who is in possession and uninterrupted enjoyment of his property to commence an action for the purpose of vindicating his rights or silencing adverse claims thereto." The existence of any such power was denied. The court said: "It is for him alone to determine whether it is proper or necessary to bring such suit, and his determination or action in the premises cannot prejudice his right of action for any subsequent injuries or wrongs. Nor can the legislature make his failure to do what they have no right to require a bar to a suit which he has a right to bring. * * * But suppose it is intended by this law to require the original owner to commence an action within the time fixed, or be forever barred from testing or questioning the validity of the assessment or sale. Is such a law sanctioned by the constitution? * * *It may be admitted that it is competent for the legislature to limit the time within which a party in possession may commence an action under our statutes to remove a cloud from his title or silence an adverse claim, but that it may require him to bring such action as a condition to the enjoyment of his property in the

enforcement or defense of his rights is quite a different thing. It is not necessary for a party in the enjoyment of his rights to institute any proceedings against an adverse claimant, and to require him to do so would be, in many cases, imposing a grievous and expensive burden. A law requiring a party to take such action is not, nor has it any analogy to a statute of limitations. Statutes of limitation only operate as an extinguishment of a remedy, and, of course, can have no application to a party who neither seeks nor needs a remedy. The Supreme Court of Michigan, in Groesbeck v. Seeley, 13 Mich. 329, says: " 'Limitation laws always must operate to compel a party to enforce or prosecute his claim within a reasonable time, but a party who is in the enjoyment of his rights cannot be compelled to take measures against an adverse claimant, and a law taking away the rights of a party in such cases is an unlawful confiscation, and in no sense a limitation law.' This position is, I think, tenable. Property in our state is not held subject to the will or permission of the legislature. The rights of property holders are fixed and guarded by the organic law. * * * 'Due process of law,' without which, the constitution declares, a person shall not be deprived of life, liberty or property, is not merely an act of the legislature. * * * That the plaintiff was the owner of the land, and authorized to prosecute and defend in the courts his rights thereto, is admitted. That he has been deprived of either his property or legal rights, by that due process of law which 'proceeds upon inquiry and renders judgment after trial,' cannot be pretended. If the statute should be sustained, it would effect this, for a person is deprived of his property and legal rights when he is forbidden to test or question the validity of the title of an adverse claimant. The statute would deprive a person of his property, if he fails to do an act which may be done or omitted without any violation of law, and which neither his duty nor interest requires him to do, and makes the performance of such act a condition to his right to sue for or defend his property in the courts; whereas the constitution declares that he shall not be deprived of his property by any mere legislative act, and that he shall be entitled to 'justice freely and' without purchase, completely and without denial, promptly and without delay, conformably to the laws.' * * *"

Again, in Feller v. Clark, Judge Mitchell said: "The legislature cannot require a person in the uninterrupted enjoyment of his

own property to commence an action for the purpose of vindicating his right against some void claim existing merely on paper, and to declare that, by his failure to do so, the title of his property shall vest in the holder of that void claim who has never been in possession under it." For the same reason, the Supreme Court of Illinois declared a statute unconstitutional, which required that one not in possession, but who had paid taxes for seven years upon unoccupied land, under color of title, "shall be deemed and adjudged to be the owner." Harding v. Butts, 18 Ill. 503; Newland v. Marsh, 19 Ill. 376.

In Taylor v. Miles, 5 Kan. 302, 7 Am. Rep. 558, the court had under consideration a statute which prohibited actions to avoid tax sales or deeds, unless commenced "within two years from the time of recording of the tax deed or sale, and not thereafter." It was held that the statute did not apply to void sales and void deeds. The court said, in part: "Can it be claimed that a judgment void because the court had no jurisdiction, either of the person or of the subject-matter of the suit, can be made good by lapse of time, or by any statute of limitations? Would not such a claim be preposterous? And is a tax deed a subject of more solemnity, or a matter to be treated with greater respect, than a solemn judgment of a court of record?    *    *    *    A void tax deed, founded upon a void tax, can neither create title nor draw to its holder the constructive possession of the property. It is void for all purposes. The original owner still continues to hold the absolute and paramount title, both in law and equity, and to hold the constructive possession of the property.    *    *    *    It is conceded that statutes of limitations are now everywhere upheld, that they are considered favorably as statutes of repose; but it does not therefore follow that everything that may be called a statute of limitations, is a statute of limitations, nor that statutes of limitation shall be applied where they can have no possible application.    *    *    *    Up to the last moment before the statute had completely run, the plaintiff had no title, no possession, either actual or constructive, no property, no right of any kind to the land; and the next moment, when the two years had elapsed and the statute had completely run, the plaintiff was left in the same condition as he was before, with the same rights and the same property that he had before, and no more, and secure (as he was before) from any action to recover anything back from him. If it is intended

by the statute to compel a man to sue before he is injured, if it is intended to compel him to commence an action for the recovery of his land while he is in the full possession and enjoyment of the same, and, in default thereof, if it is intended to take his property from him, and during the same minute give it to another, it is a statute of confiscation, and not a statute of limitation. Groesbeck v. Seeley, 13 Mich. 329; Baker v. Kelly, 11 Minn. 480 (Gil. 358). Such a statute could not be upheld. The legislature cannot say that a man shall do a thing that they have no right to compel him to do do, and then say, if he does not do it, he shall forfeit his estate."

Up to the present time the principle announced in Groesbeck v. Seeley has been approved, I believe, wherever referred to. I know of no court, where the question has been presented, which has withheld its approval. It appeals to me as sound, and is founded on the plain principles of natural justice, and should be adhered to. I cannot assent to the view that the legislature has the power to forfeit one's property to a void claimant, because the owner, who is in possession of his rights, does not see fit to commence a lawsuit within a specified period, and yet that is what is done in this case. This is not taking property by due process of law, but by the fiat of the legislature. If the legislature has the power to effect this result in this case, it has in all cases, and all property is held subject to be forfeited to the holder of void claims without the judgment of a court and by legislative action alone. It is a misnomer to call such statutes statutes of limitation. If named from their purpose and effect, they should be called "statutes abolishing defenses and making valid void claims," or, as named by the Kansas court, "statutes of confiscation." It follows, in my opinion, at least, that section 1345 should be held to be inapplicable to void sales such as this, and for the two reasons already stated—(1) because that was the construction given to it before we adopted it, and is also the general construction given to such statutes, and (2) for this reason that, as applied to void sales, it cannot be upheld. The sale in this case was utterly void, and a sale is a jurisdictional prerequisite to the passing of title. The legislature cannot declare valid that which is void, and thus preclude judicial inquiry. The sale was void for want of a judgment, and the consequent want of authority in the officer who attempted to make in. It was also void for another

reason. The amount for which the sale was made included, besides the tax for one year, which the majority assume was valid, the costs of the void judgment and a tax for one year, which it is conceded was void. The legislature could not authorize a sale for these illegal items. Alexander v. Gordon, 41 C. C. A. 228, 238. See cases cited on the point in the dissenting opinion in Beggs v. Paine (filed herewith) 109 N. W. 322. It will hardly be claimed that the legislature has the power to declare a sale valid which it could not authorize, and such a sale is not cured by a statute of limitation. See cases cited.

The trial court held that the defendant acquired no right through the void sale of November 21, 1897, and upheld the plaintiff's title. For the reasons I have stated, I think the judgment was right and should be affirmed. Upon the questions considered in the majority opinion other than those I have referred to, I concur in the conclusion of my associates.